**UNITED STATES of America,**

v.

**Oswald G. BLAKE and Leonard Eason.**

**No. 87–6250–CR.**

United States District Court,
S.D. Florida,
Fort Lauderdale Division.

Aug. 5, 1988.

William Shockley, Asst. U.S. Atty., Fort Lauderdale, Fla., for U.S.

Michael O'Kane, Fletcher Peacock, Office of Federal Public Defender, Fort Lauderdale, Fla., for defendants.

## ORDER

ROETTGER, District Judge.

THIS CAUSE is before the Court on the Motions to Suppress Evidence filed on behalf of Defendants, LEONARD EASON and OSWALD BLAKE. A hearing having been held regarding the Motions to Suppress and this Court having considered the Motions, the memoranda in support thereof, and the arguments of counsel, finds as follows.

This Court issued Findings of Fact orally from the bench immediately following the arguments of counsel. Those Findings of Fact and the transcripts of said Findings are hereby made a part of this Order. In

accordance with those Findings of Fact previously announced, the Court issues the following Conclusions of Law.

At the conclusion of the hearing held by this Court, the Court requested that counsel submit supplementary memoranda addressing three issues. The supplementary memoranda have been submitted and with respect to the issues addressed therein and the disposition of defendants' Motion to Suppress, the conclusions of the Court follow.

■ The first issue presented to this Court is whether seizure of defendants occurred in the instant case. The Court having found as a matter of fact that Officer Hendrick returned Defendants' tickets and Defendant Blake's driver's license immediately after inspecting them briefly, the Court concludes that Defendants Eason and Blake were free to leave the scene. As in the *Rodriguez* case,

> the initial contact between the officers and [defendants], where they simply asked if [defendants] would step aside and talk with them, was clearly the sort of consensual encounter that implicates no Fourth Amendment interest.

*Florida v. Rodriguez,* 469 U.S. 1, 5–6, 105 S.Ct. 308, 311, 83 L.Ed.2d 165 (1984). The Court finds that the initial contact between the Airport Narcotics Unit and defendants in the case at bar was consensual and did not constitute a seizure.

■ The second issue this Court addressed is whether such consent for a search was voluntarily given. A search conducted pursuant to valid consent is constitutionally permissible. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The question of whether the consent was voluntary "is a question of fact to be determined from the totality of all the circumstances." *Id.* at 227, 93 S.Ct. at 2048. The government must prove consent by a preponderance of the evidence. *Schneckloth* at 222, 93 S.Ct. at 2045; *United States v. Mendenhall,* 446 U.S. 544, 557, 100 S.Ct. 1870, 1879, 64 L.Ed.2d 497 (1980).

The government argues that the voluntary consent of defendants was established by the testimony of Detective Perry Hendrick. Detective Hendrick testified that no force or threats were utilized in obtaining the consent of defendants and that defendants were informed that they had a right to refuse to consent to the search.

This Court finds, therefore, that although there was no reasonable suspicion or probable cause to justify the stop of defendants in the case at bar, consent was initially voluntarily given by defendants. The officers, however, exceeded the limits of decency and thereby exceeded the limits of the consent. Certainly when the police are relying upon consent as the basis for a warrantless search, they have no more authority than they have been given by the consent.

This Court finds that although defendants, LEONARD EASON and OSWALD BLAKE, did consent to a brief, non-coercive encounter with the officers, defendants could not have possibly foreseen the course that the arresting officers would choose to pursue in their search of defendants. Defendants clearly did not consent to the intimate search of their persons that was conducted in the public area of the Fort Lauderdale Airport. As this Court recognized in the Findings of Fact, the request by the officers to search defendants' "person" was ambiguous at best and it is not clear whether Defendants understood exactly what was entailed by the phrase "body search."

Defendant Blake was searched before Defendant Eason. Defendant Blake testified that Detective Hendrick told him that he had the right to refuse a search and that he would like to search "luggage and person—a body search." Both Defendants agreed they gave permission to a search of the luggage.

The court finds that there was a consent given by Blake to search of the person and that the search occurred within seconds according to Detective Hendrick.

Deputy Hendrick indicated that Deputy Sergeant Cutliff asked Defendant Eason, with gestures toward the crotch area, "do you mind"? and that Eason agreed. De-

fendant Eason testified that Detective Cutliff made the search of his crotch but the Court did not find his testimony to be credible. He did say that Detective Cutliff mentioned seeing something on Defendant; Detective Cutliff did not testify.

The search is described as a reaching for the crotch area of any suspect or a person being searched and the detective disputes that it was a "crotch grab." Upon searching the crotch area of both Defendants, Detective Hendrick felt an object and heard a crinkling sound from each. That constituted the reasonable cause for taking both Defendants back to the deputies' office for further search. Detective Hendrick testified that he used the same modus operandi and that on that particular day he had talked with 16 to 20 people and most consented, but one or two did not. He testified further that initially some complain after the search, but that after the deputies explain their mission in interdicting narcotics moving from airport to airport within the United States, that the persons understand and many "thank us for the job we're doing." He testified that he has made 100 "crotch finds."

The court does not dispute Detective Hendrick's observations or results, but the court confesses amazement that there have apparently been no complaints lodged or fists thrown by indignant travelers.

The final issue posed to the parties by the Court is whether even if consent was freely and voluntarily given, the nature of the search conducted in the instant case renders the search unconstitutional as being unreasonable or outrageous. This is the dispositive factor in the case at bar.

The government contends that the searches of defendants that the officers in this case conducted were a less intrusive pat-down of the exterior of defendants' clothing. The government asserts that pat-downs are perfectly acceptable procedures which are routinely and properly employed and which are less intrusive than complete strip searches.

The task of interdiction of the heavy traffic in narcotic drugs from South Florida airports to other parts of the country is not easy and this Court hates to fashion a ruling eliminating what apparently is an effective tool in the interdiction of narcotic traffic. However, the method used is little short of outrageous—particularly in the large public "lobby-type" area of the airport—unless the request to the person stopped is explained in more detail than was given here so that the consent is completely voluntary and constitutes a knowing consent.

The Court notes that a defendant asked Detective Hendrick on cross-examination why a narcotic-sniffing dog was not used rather than crotch-touching when the dog was available in the airport. The reason is illustrative of some of the problems of law enforcement in this area: "because when the dog alerts, it bites."

This Court concludes, however, that the practice employed by the officers in the case at bar is unreasonable and unconstitutional. The Fourth Amendment to the United States Constitution requires that searches and seizures be reasonable. "Determining the reasonableness of any search involves a twofold inquiry: first, one must consider 'whether the ... action was justified at its inception' ... second, one must determine whether the search as actually conducted 'was reasonably related in scope to the circumstances which justified the interference in the first place." *New Jersey v. T.L.O.*, 469 U.S. 325, 341, 105 S.Ct. 733, 742–43, 83 L.Ed.2d 720 (1985) (citations omitted). The search by officers in the case at bar clearly fails the second part of this test.

The permissibility of any particular law enforcement practice is judged by "balancing its intrusion on the individual's Fourth Amendment interest against its promotion of legitimate governmental interests." *United States v. Villamonte–Marquez*, 462 U.S. 579, 588, 103 S.Ct. 2573, 2579, 77 L.Ed.2d 22 (1983). The highly intrusive nature of the search conducted here cannot be sanctioned by this Court. This was not a border search and it was not based upon reasonable suspicion or probable cause. Indeed, Officer Hendrick testified that he was surprised to find that

Defendants were in possession of illegal substances. This Court cannot condone such arbitrary, and highly intrusive searches. Accordingly, it is

ORDERED AND ADJUDGED that the Motions to Suppress Evidence filed on behalf of Defendants, LEONARD EASON and OSWALD BLAKE are hereby GRANTED.

DONE AND ORDERED.