**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Oswald G. BLAKE, Leonard Eason,**
**Defendants–Appellees.**

No. 88–5900.

United States Court of Appeals,
Eleventh Circuit.

Nov. 17, 1989.

796

Dexter Lehtinen, U.S. Atty., William Shockley, Sonia Escobio O'Donnell, Linda Collins Hertz, Asst. U.S. Attys., Miami, Fla., for U.S.

Fletcher Peacock, Asst. Federal Public Defender, Ft. Lauderdale, Fla., for Blake.

Michael J. O'Kane, Ft. Lauderdale, Fla., for Eason.

Before ANDERSON and COX, Circuit Judges, and SHOOB *, District Judge.

ANDERSON, Circuit Judge:

In this appeal, the United States argues that the district court erred in granting the motion to suppress filed by defendants Oswald G. Blake and Leonard Eason. The issue in this case involves whether police officers exceeded the scope of the defendants' consent to a search of their "person," when, upon receiving the consent, the officers immediately reached into the defendants' crotch area and felt their genitals. Upon review, we find that the trial court's factual findings are not clearly erroneous, and consequently we affirm the district court.

## I. FACTUAL BACKGROUND [1]

On December 11, 1987, three Broward County Sheriff's Deputies were working at

---

* Honorable Marvin H. Shoob, U.S. District Judge for the Northern District of Georgia, sitting by designation.

1. Unless otherwise specified, the discussion of facts are culled from the district court's findings of fact as supplemented by undisputed facts

the South Terminal in the Fort Lauderdale/Hollywood International Airport. As defendants Blake and Eason were leaving the Piedmont Airlines ticket counter and entering into the middle of an airport corridor, they were approached by two of the deputies.[2] The officers, dressed in plainclothes, identified themselves as deputy sheriffs to Blake and Eason by showing their badges and asked Blake and Eason if they would consent to speak with them. After Blake and Eason gave their consent, the officers asked them for their plane tickets and identification. Blake responded that he had a driver's license; Eason said that he had no identification. One of the officers, Detective Hendrick, renewed the request to see their tickets. When Blake responded that the tickets were in his carry-on bag, Hendrick suggested that they move over to a bench approximately five feet away.

At the bench, Blake opened his bag and gave Hendrick the airline tickets. The tickets were one-way tickets to Baltimore in the names of "Omar Blake" and "Williams."[3] After examining the tickets, Hendrick immediately returned them to Blake and again asked to see their identification. Blake gave Hendrick his driver's license, and Eason again responded that he did not have any identification. Hendrick noted that Blake's driver's license was in his name and returned the license to him immediately.

Detective Hendrick then asked defendants for permission to search their baggage and their persons for drugs. He explained to Blake and Eason that they had the right to refuse consent to the search. Both defendants agreed to a search of their luggage and their persons. Within seconds of Blake's having given his consent, Hendrick reached into Blake's groin region where he did a "frontal touching"[4] of the "outside of [Blake's] trousers"[5] in "the area between the legs where the penis would normally be positioned."[6] Upon reaching into Blake's crotch, Hendrick felt an object and heard a crinkling sound.

Hendrick repeated this procedure upon receiving Eason's consent and, as with Blake, felt a foreign object in Eason's crotch and heard a crinkling sound. Hendrick and the other officers then handcuffed Blake and Eason and advised them of their *Miranda* rights. Blake and Eason were then taken to the airport's drug interdiction office outside the public concourse where Hendrick removed a package of suspected crack cocaine from each of their crotches. A narcotics-sniffing dog was employed to search the defendants' bags. A subsequent search of the bag revealed drug paraphernalia in the form of numerous glassine envelopes and little zip-lock bags typically used for packaging crack cocaine among the contents of the luggage.

On December 23, 1987, a grand jury empaneled in the Southern District of Florida indicted both Blake and Eason, charging them with conspiracy to possess with intent to distribute at least 50 grams of drugs containing a cocaine base in violation of 21 U.S.C.A. § 846 and with possession with intent to distribute over 50 grams of narcotics containing a cocaine base in violation of 21 U.S.C.A. § 841(a)(1) and 18 U.S.C.A. § 2. On August 5, 1988, the district court granted Blake and Eason's motion to suppress, holding that the police officers in question exceeded the scope of the consent

that were testified to during the suppression hearing.

**2.** One of the officers testified that he had no reason for choosing the defendants, but that his actions were simply part of a random, voluntary drug interdiction policy. He admitted that he saw nothing suspicious about the defendants and that he was not relying upon a "drug courier" profile.

**3.** According to the district court, although Eason did not provide any identification bearing the name Williams, "deputies had no reason to assume at that point that Defendant Eason's name was not Williams." Oral Findings of District Court, Transcript of Suppression Hearing 147.

**4.** District Court's Oral Findings of Fact, Transcript of Suppression Hearing 148.

**5.** District Court's Oral Findings of Fact, Transcript of Suppression Hearing 152.

**6.** District Court's Oral Findings of Fact, Transcript of Suppression Hearing 148.

given by Blake and Eason, and that the search as conducted by the officers was outrageous and unreasonable.[7] *United States v. Blake*, 718 F.Supp. 925 (S.D.Fla. 1988). The government's appeal followed. *See* 18 U.S.C.A. § 3731.

## II. LEGAL ANALYSIS

■ It has been long recognized that police officers, possessing neither reasonable suspicion nor probable cause, may nonetheless search an individual without a warrant so long as they first obtain the voluntary consent of the individual in question. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). In conducting a search pursuant to a properly obtained, voluntary consent, however, the extent of the search must be confined to the terms of its authorization. *United States v. Rackley*, 742 F.2d 1266, 1271 (11th Cir.1984). "A suspect's consent can impose limits on the scope of a search in the same way as do the specifications of a warrant," and those limits serve to restrain the permissible boundaries of the search. *United States v. Milian–Rodriguez*, 759 F.2d 1558, 1563 (11th Cir.), *cert. denied*, 474 U.S. 845, 106 S.Ct. 135, 88 L.Ed.2d 112 (1985).

■ Whether a suspect voluntarily gave consent to a search is a question of fact to be determined by the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. at 249–50, 93 S.Ct. at 2059; *United States v. Chemaly*, 741 F.2d 1346, 1352 (11th Cir.1984), *vacated*, 741 F.2d 1363, *reinstated on reh'g*, 764 F.2d 747 (11th Cir.1985) (en banc). The government bears the burden of proving both the existence of consent and that the consent was not a function of acquiescence to a claim of lawful authority but rather was given freely and voluntarily. *United States v. Massell*, 823 F.2d 1503, 1507 (11th Cir.1987). The district court's factual findings as to whether or not voluntary consent was given may only be disturbed if they

are clearly erroneous. *Id.; United States v. Chemaly*, 741 F.2d at 1353.

■■ Similarly, whether there were any limitations placed on the consent given and whether the search conformed to those limitations is to be determined by the totality of the circumstances. *See United States v. Milian–Rodriguez*, 759 F.2d at 1563–64. The trial court's factual determinations as to these two issues are also due deference on appeal and will not be overturned unless clearly erroneous. *See id.* *Accord United States v. Espinosa*, 782 F.2d 888, 892 (10th Cir.1986); *United States v. Hardin*, 710 F.2d 1231, 1236 (7th Cir.), *cert. denied*, 464 U.S. 918, 104 S.Ct. 286, 78 L.Ed.2d 263 (1983); *United States v. Sierra–Hernandez*, 581 F.2d 760, 764 (9th Cir.) (Kennedy, J.), *cert. denied*, 439 U.S. 936, 99 S.Ct. 333, 58 L.Ed.2d 333 (1978).

### A.

■ The determination as to whether a suspect's consent is voluntary is not susceptible to neat talismanic definitions; rather, the inquiry must be conducted on a case-by-case analysis. *Schneckloth v. Bustamonte*, 412 U.S. at 224–25, 93 S.Ct. at 2046. To assist the lower courts in making their determinations, this court has, on prior occasions, identified a non-exhaustive list of relevant factors to consider when making the assessment of whether consent to a warrantless search is voluntary:

voluntariness of the defendant's custodial status, the presence of coercive police procedure, the extent and level of the defendant's cooperation with police, the defendant's awareness of his right to refuse to consent to the search, the defendant's education and intelligence, and, significantly, the defendant's belief that no incriminating evidence will be found.

*United States v. Chemaly*, 741 F.2d at 1352 (*quoting United States v. Phillips*, 664 F.2d 971, 1023–24 (5th Cir. Unit B 1981) (footnotes omitted), *cert. denied*, 457 U.S.

---

**7.** The district court also held that pursuant to *Florida v. Rodriguez*, 469 U.S. 1, 5–6, 105 S.Ct. 308, 311, 83 L.Ed.2d 165 (1984) (per curiam), the initial contact between the officers and

Blake and Eason in which the officers asked to see their identification and tickets did not constitute a seizure. This conclusion has not been challenged by the parties in this appeal.

1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982)). Given the extremely intimidating nature of airport stops, this court has emphasized that verbal agreements acquiescing in officers' requests should be "scrutinized exceptionally closely to ensure a complete absence of coercive influence." *United States v. Berry,* 670 F.2d 583, 596–98 (5th Cir. Unit B 1982) (en banc).[8] *See United States v. Espinosa–Guerra,* 805 F.2d 1502, 1507–08 & n. 18 (11th Cir.1986).

In this case, we have no problem in concluding that the district court's finding that the defendants consented to a search is not clearly erroneous. The officers were in plainclothes and did not appear to be carrying weapons. Detective Hendrick asked whether the defendants would show him their tickets and identification; he did not demand that they do so. After receiving and reviewing the tickets and Blake's driver's license, he immediately returned them to the defendants. Additionally, the officers applied no coercive tactics and did not attempt to remove the defendants from the public concourse. Furthermore, Hendrick informed them of their right both to leave and not to consent to the requested search.

In short, none of the factors that this court has identified as circumstances suggesting police coercion that might render consent involuntary—e.g., an officer blocking or otherwise impairing the individual's progress, *United States v. Bowles,* 625 F.2d 526 (5th Cir.1980); an officer retaining an individual's tickets or identification; *United States v. Chemaly,* 741 F.2d at 1352; *United States v. Robinson,* 690 F.2d 869, 875 (11th Cir.1982); an officer failing to inform the suspect that he or she was free to leave and that he or she could refuse to permit the requested search,

*United States v. Chemaly,* 741 F.2d at 1353; *United States v. Robinson,* 690 F.2d at 876; an officer physically maneuvering the individual in a particular direction, *United States v. Berry,* 670 F.2d at 604; *see United States v. Espinosa–Guerra,* 805 F.2d at 1507–08; an officer coercing the individual to move from a public area to a private area or office, *United States v. Elsoffer,* 671 F.2d 1294, 1298 (11th Cir. 1982); *United States v. Berry,* 670 F.2d at 604; an officer asking questions or making statements that would lead a reasonable individual to believe that he or she had been singled out as suspicious, *United States v. Chemaly,* 741 F.2d at 1353; *United States v. Elsoffer,* 671 F.2d at 1298; *United States v. Berry,* 670 F.2d at 597; or an officer informing the individual that an innocent person would cooperate with the police, *United States v. Setzer,* 654 F.2d 354, 357–58 (5th Cir. Unit B 1981), *cert. denied,* 459 U.S. 1041, 103 S.Ct. 457, 74 L.Ed.2d 609 (1982)[9]—are present in this case.[10] Consequently, we find no error in the district court's finding that the consent that was given was voluntary. *Accord United States v. Puglisi,* 723 F.2d 779, 784 (11th Cir.1984); *United States v. Armstrong,* 722 F.2d 681, 684 (11th Cir.1984); *United States v. Jensen,* 689 F.2d 1361, 1363–64 (11th Cir.1982) (per curiam); *United States v. Smith,* 649 F.2d 305, 308 (5th Cir. Unit B 1981), *cert. denied,* 460 U.S. 1068, 103 S.Ct. 1521, 75 L.Ed.2d 945 (1983).

### B.

A finding that the search was voluntary, however, only finishes the first stage of the inquiry. As mentioned above, in order to establish that the warrantless

---

**8.** This former Fifth Circuit case was decided after the close of business on September 30, 1981, and is binding precedent under *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982).

**9.** This case was decided prior to the close of business on September 30, 1981, and is binding precedent under *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981).

**10.** We emphasize that the existence of any one of these factors does not necessarily lead to the

conclusion that consent was involuntary. *See, e.g., Schneckloth v. Bustamonte,* 412 U.S. at 234, 93 S.Ct. at 2051 (holding that consent may be voluntary even without proof of the defendant's knowledge of a right to refuse); *United States v. Alvarez–Sanchez,* 774 F.2d 1036, 1041 (11th Cir. 1985). Rather, all of the factors listed are indicia of coercion to be considered during the weighing of the totality of the circumstances in determining whether consent was indeed voluntary.

search that was conducted was pursuant to the defendants' voluntary consent, it is incumbent upon the government to show not only that the consent was obtained without coercion but also that the search conducted was within the purview of the consent received. "The scope of a consent search is defined by the scope of actual consent in the same way that the scope of a search based upon a search warrant is defined by the warrant." *United States v. McBean,* 861 F.2d 1570, 1573 (11th Cir.1988) (per curiam). *See also Mason v. Pulliam,* 557 F.2d 426, 429 (5th Cir.1977) ("[w]hen the basis for a search or seizure is consent, the government must conform to the limitations placed upon the right granted to search [or] seize").

It was at this second stage that the district court held against the government. The court held that the consent given by the defendants allowing the officers to search their "persons" could not, under the circumstances, be construed as authorization for the officers to touch their genitals in the middle of a public area in the Fort Lauderdale Airport. In making this determination the court reasoned that the search conducted constituted such a serious intrusion into the defendants' privacy that, under the circumstances, it could not be said that the defendants had knowingly and voluntarily consented to the search in question. *United States v. Blake,* 718 F.Supp. at 926.

Looking at all the evidence and surrounding circumstances, we cannot say that this conclusion is clearly erroneous. *See United States v. Massell,* 823 F.2d at 1507 (under the clearly erroneous standard, "if the lower court's account is plausible in light of the record viewed in its entirety, we may not reverse it, even if we would have weighed the evidence differently"). We see no error in the district court's conclusion that a general understanding of a request to search one's "person" under the circumstances of this case simply did not lend itself to an interpretation that the officers were requesting to conduct a search as intrusive as the ones conducted here.[11] Hendrick's request to search Blake and Eason's "persons," without more explanation, need not have been reasonably construed as a request for permission to touch the defendants' genitals.[12]

Our conclusion, of course, does not imply that such an intrusive search may never be consensual; it merely requires that an officer obtain proper consent. Given the circumstances of this case, particularly the setting, the district court concluded that proper consent had not been obtained. It must be remembered that the request for the search took place in a public airport terminal—a setting in which particular care needs to be exercised to ensure that police officers do not intrude upon the privacy interests of individuals. *See United States v. Berry,* 670 F.2d at 597–98. Given this public location, it cannot be said that a

---

**11.** To this extent, we observe that, even in the context of the prison setting where privacy rights are viewed as being on a lesser scale, other courts have noted the increased level of intrusion when a frisk search of the genital region is involved. *See Sterling v. Cupp,* 44 Or.App. 755, 607 P.2d 206 (1980) (holding unconstitutional under state constitution frisk search procedure whereby female prision guards conduct full frisk searches, including genital and anal areas, of clothed male inmates as constituting an invasion of the "final bastion of privacy" of the human body), *as modified,* 290 Or. 611, 625 P.2d 123 (1981). *Cf. Madyun v. Franzen,* 704 F.2d 954, 956–57 & nn. 1–2 (7th Cir.) (frisk search of male inmate by female guard does not unreasonably invade inmate's privacy when frisk is limited to the non-genital areas), *cert, denied* 464 U.S. 996, 104 S.Ct. 493, 78 L.Ed.2d 687 (1983); *Smith v. Fairman,* 678 F.2d 52 (7th Cir.1982) (per curium)

(same), *cert. denied,* 461 U.S. 907, 103 S.Ct. 1879, 76 L.Ed.2d 810 (1983).

**12.** Although there was some testimony from Hendrick to the effect that one of the officers, Deputy Sergeant Cutliff, gestured towards Eason's crotch prior to Hendrick's search of Eason's genitals, the district court apparently found this evidence to be too tenuous and inconclusive to hold that Eason had knowledge of the proposed search. Since the government has not argued that Cutliff's gesture affected the scope of Eason's consent, we cannot disagree with the district court's conclusion.

Similarly, the government has not argued, either in the district court or on appeal, that there was probable cause for searching Eason by virtue of what was learned in the previous search of Blake. Such an argument, if available on the facts, has been abandoned.

reasonable individual would understand that a search of one's person would entail an officer touching his or her genitals. One would surely expect a search with a hand-held magnometer, or a general pat-down of one's pockets, sides and shoulders. *See United States v. Albarado,* 495 F.2d 799, 807 (2nd Cir.1974) (characterizing "typical" airport frisk as being in the nature of a " 'pat-down', involving only the patting of external clothing in the vicinity of pockets, belts or shoulders"). One might even reasonably expect the traditional frisk search, described in *Terry v. Ohio,* 392 U.S. 1, 17 n. 13, 88 S.Ct. 1868, 1877 n. 13, 20 L.Ed.2d 889 (1968), as a "thorough search ... of ... arms and armpits, waistline and back, the groin and area about the testicles, and the entire surface of the legs down to the feet." [13] However, the district court was not clearly erroneous in concluding that the consent given in this case, under all the circumstances, did not extend to touching the genitals.

Since the district court's factual finding that the search here was not within the consent actually given is not clearly erroneous, the judgment of the district court is

AFFIRMED.

SHOOB, District Judge, concurring:

I concur with the majority opinion but wish to express my opinion concerning the outrageousness of the conduct of the law enforcement officers in this case. While I agree that the district court's decision was not clearly erroneous, I would go further and hold that intimate searches may not occur as part of random airport stops absent explicit and voluntary consent.

A layperson approached in an airport concourse by law enforcement officers making random stops ordinarily would consent to a search of his or her luggage and even a search of his or her person. I do not believe, however, that a layperson who consents to such a search would anticipate the kind of intrusive and intimate contact that occurred in this case. I share the district court's "amazement that there have apparently been no complaints lodged or fists thrown by indignant travelers" subjected to these searches. *United States v. Blake and Eason,* 718 F.Supp. 925, 927 (S.D.Fla.1988).[1] As the majority indicates, a layperson consenting to a search in the public area of an airport might expect a search of his or her pockets, sides and shoulders or use of a hand-held magnometer. It is a different matter entirely when the search begins with the law enforcement officer's reaching for and touching the individual's genital area.

I also have doubts about the majority's conclusion that the subject of a random airport stop might "reasonably expect the traditional frisk search, described in *Terry v. Ohio,* 392 U.S. 1, 17 n. 13, 88 S.Ct. 1868, 1877 n. 13, 20 L.Ed.2d 889 (1968)." *Terry* permits a frisk search where a law enforcement officer reasonably believes that his safety or that of others is in danger. *Id.* at 27, 88 S.Ct. at 1883 (citations omitted). A random airport stop without any articulable suspicion or fear would not support the more personal search authorized by *Terry.* Even if *Terry* were applicable, I do not agree that such a thorough search would be anticipated by an individual's consent to a personal search in a busy airport concourse.[2]

The majority recognizes that airport terminals are settings where particular care must be exercised to protect the privacy rights of individuals. *See United States v. Berry,* 670 F.2d 583, 596–98 (5th Cir. Unit B 1982) (en banc). Nevertheless, the majority limits its holding to the conclusion that the district court was not clearly erroneous based upon the facts of this case. I

---

**13.** We need not decide in this case whether a traditional frisk search would have been encompassed within the scope of the consent given here.

**1.** This writer would react in that fashion—especially if the officer was smaller than he.

**2.** The majority quotes a footnote that describes a *Terry* search but does not cite language immediately following in the text of the decision where the Supreme Court characterizes such a search as "a serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment...." *Id.* at 17, 88 S.Ct. at 1877.

would prefer a holding establishing that crotch searches during random airport stops must be preceded by a specific request and voluntary consent. In all other respects, I concur in the majority opinion.