WARNER, Judge.
We affirm on the authority of U.S. v. Blake, 888 F.2d 795 (11th Cir.1989), in that we cannot conclude that based on the totality of the circumstances before the court that the trial court’s factual determinations were clearly erroneous.
The issue in this case is whether the consensual search of the defendant exceeded its scope when the female officer searched the male appellant’s crotch area. From the totality of the circumstances an affirmance is warranted mainly because it is not clear from the evidence that the officer actually touched appellant’s genitals. The testimony indicated that after receiving permission to search appellant's person, Officer Cutcliffe noticed a bulge “a little bit higher than where his male organs would be, normally.” She pointed out for the court where she saw and touched the bulge, and her partner who actually removed the object from appellant’s pants testified that the narcotics package was taped between his belt and the top of his zipper. Therefore, the court could reasonably conclude that this search did not intrude into impermissible areas.
However, we feel compelled to comment on what appears to be a routine investigative procedure used in the Broward County Sheriff’s Office as revealed by the testimony in this case. The deputies are trained to make random encounters of the traveling public in airport terminals, bus stations, and train stations. They secure the person’s “voluntary” consent to search the “person” and then proceed to search the crotch and genital area of the person without notifying them of the fact that they intend to search this most private area of the body in a public place. Officer Cut-cliffe testified that she has searched hundreds of men’s crotches without discovering any contraband. She has also searched women in the same fashion. We emphasize that these encounters are random, not generated by any articulable suspicion of wrongdoing, nor by a drug courier profile, nor by a fear for the officer’s safety. And at least based upon the hundreds of searches which do not produce any drugs, we conclude from the testimony that the genital search is not a very effective investigative tool in stopping the drug trade.
If the Fourth Amendment means anything, it means that we citizens should be free from unreasonable searches of the most private areas of our bodies. We would agree with Federal District Judge Roettger in U.S. v. Blake and Eason, 718 F.Supp. 925 (S.D.Fla., 1988), that a person encountered by law enforcement in the public areas of an airport terminal could not reasonably expect that a consent to *78 search their “person”, without more, would include intimate contact with the genital area. That would be even more true under the facts of this case where a female officer is searching a man. Cf. e.g., Sterling v. Cupp, 44 Or.App. 755, 607 P.2d 206 (1980), as modified, 290 Or. 611, 625 P.2d 123 (1981); Madyun v. Franzen, 704 F.2d 954 (7th Cir.1983), cert. denied, 464 U.S. 996, 104 S.Ct. 493, 78 L.Ed.2d 687 (1983); Smith v. Fairman, 678 F.2d 52 (7th Cir.1982), cert. denied, 461 U.S. 907, 103 S.Ct. 1879, 76 L.Ed.2d 810 (1983) (all of which recognize that even a male prison inmate has a right of privacy against a frisk of the genital area by a female guard.)
Thus, this decision should not be read as a stamp of approval to the search procedure employed in this case. It just so happens that the search conducted revealed drugs in an area which could be within the legitimate scope of the consent before it extended to more private areas of the defendant’s anatomy.
POLEN, J., concurs.
WALDEN, J., concurs in result only.