[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-13043
Non-Argument Calendar
_____

D.C. Docket No. 4:10-cr-00029-RH-WCS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FRANCISCO PEGUERO, JR.,
a.k.a. Frank Peguero,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(May 9, 2013)

Before MARCUS, WILSON and MARTIN, Circuit Judges.

PER CURIAM:

Francisco Peguero, Jr. appeals his convictions for conspiracy to distribute

and possess with intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), and 846 and possession with intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii) and 18 U.S.C. § 2.  On appeal, Peguero argues that we should reverse the district court's denial of his motion to suppress for three reasons: (1) the officer lacked probable cause to stop him for speeding; (2) he was unlawfully detained because the officer unreasonably prolonged the traffic stop; and (3) his subsequent consent to search his vehicle was coerced and invalid.  For the reasons that follow, we affirm.

## I.

"In reviewing a district court's denial of a motion to suppress, we review its findings of fact for clear error and its application of law to those facts de novo." *United States v. Ramirez*, 476 F.3d 1231, 1235 (11th Cir. 2007) (emphasis omitted).  "We also construe all facts in the light most favorable to the prevailing party in the district court[—]here, the government." *United States v. Boyce*, 351 F.3d 1102, 1105 (11th Cir. 2003).  We review determinations regarding probable cause de novo.  *United States v. Butler*, 102 F.3d 1191, 1199 (11th Cir. 1997).

"The Fourth Amendment protects individuals from unreasonable search and seizure." *United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir. 2008) (per curiam) (internal quotation marks omitted).  When the police stop a motor vehicle,

2

even for a brief period, a Fourth Amendment "seizure" occurs. *Whren v. United States*, 517 U.S. 806, 809–10, 116 S. Ct. 1769, 1772 (1996). A traffic stop is reasonable, and therefore constitutional, if the officers conducting the stop have "probable cause to believe a traffic violation has occurred." *Harris*, 526 F.3d at 1337. A determination of probable cause rests on objective factors, and the officer's subjective motives in making the stop are irrelevant. *See Whren*, 517 U.S. at 813, 116 S. Ct. at 1774. Furthermore, "a traffic stop based on an officer's incorrect but reasonable assessment of facts does not violate the Fourth Amendment." *United States v. Chanthasouxat*, 342 F.3d 1271, 1276 (11th Cir. 2003). However, "a mistake of law, no matter how reasonable or understandable,… cannot provide reasonable suspicion or probable cause to justify a traffic stop." *Id*. at 1279.

Viewed in the light most favorable to the government, the evidence presented at the suppression hearing shows that the officer had probable cause to stop Peguero for speeding. At the suppression hearing, the officer testified that he knew Peguero was speeding because he had "paced" him. Pacing is when a police officer uses his or her own speedometer to determine the speed of the suspect's vehicle. Here, while the officer maintained a speed of 79 miles per hour, Peguero's truck pulled away, which, based on the officer's training and experience, demonstrated that Peguero was traveling at least 79 miles per hour. The posted

3

speed limit for this particular stretch of highway is 70 miles per hour.  The officer further testified that he had received training in pacing and that his speedometer had recently been calibrated to ensure accuracy.  The officer had probable cause to pull over Peguero.

## II.

Peguero next argues that he was unlawfully detained because the officer unreasonably prolonged the traffic stop.  We disagree.  When evaluating whether the duration of an investigative detention is unreasonable and too intrusive, the Supreme Court has indicated that "common sense and ordinary human experience must govern over rigid criteria."  *United States v. Sharpe*, 470 U.S. 675, 685, 105 S. Ct. 1568, 1575 (1985).  We have noted that "[a] traffic stop for speeding can doubtlessly last long enough for the police to ask questions about the reasons for speeding and to conduct a variety of checks about licenses, registration, [and] insurance."  *United States v. Hernandez*, 418 F.3d 1206, 1212 n.7 (11th Cir. 2005).

Following a stop for the purpose of issuing a citation for a routine traffic infraction, the officer may lengthen the detention for further questioning beyond that connected to the initial stop, if (1) the officer "has an objectively reasonable and articulable suspicion illegal activity has occurred or is occurring;" or (2) "if the initial detention has become a consensual encounter."  *United States v. Pruitt*, 174 F.3d 1215, 1220 (11th Cir. 1999).  "[T]he [Supreme] Court [has] held, in a case

4

involving a traffic stop, that '[a]n officer's inquiries into matters unrelated to the justification for the . . . stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop.'" *United States v. Griffin*, 696 F.3d 1354, 1361 (11th Cir. 2012) (quoting *Arizona v. Johnson*, 555 U.S. 323, 333, 129 S. Ct. 781, 788 (2009)).

Here, the district court did not err when it concluded that Peguero was legally detained. The dashboard video indicates that as the officer filled out the warning form, he asked a series of routine questions to Peguero. The officer testified that the process of issuing a warning form usually takes about 10 minutes. Approximately 10 minutes had elapsed from when Peguero was stopped to the time Peguero consented to the officer's search of his vehicle. Even if the officer's questions extended the stop by a few moments, his questions were asked during the course of related administrative tasks. *See id.* Moreover, once Peguero consented to the search, the interaction became consensual for Fourth Amendment purposes. The officer's questions did not materially extend the detention.

## III.

In the absence of probable cause or reasonable suspicion, law enforcement officers "may nonetheless search an individual without a warrant so long as they first obtain the voluntary consent of the individual in question." *United States v.*

*Blake*, 888 F.2d 795, 798 (11th Cir. 1989). "The determination as to whether a suspect's consent is voluntary is not susceptible to neat talismanic definitions; rather, the inquiry must be conducted on a case-by-case analysis." *Id.* In determining whether the consent was voluntary, we will scrutinize the facts and strike a balance between a suspect's right to be free from coercive conduct and the legitimate need of the government to conduct lawful searches. *See id.*

Relevant factors in determining voluntariness, none of which are dispositive, include:

> [(1)] [the] voluntariness of the defendant's custodial status, [(2)] the presence of coercive police procedure, [(3)] the extent and level of the defendant's cooperation with police, [(4)] the defendant's awareness of his right to refuse to consent to the search, [(5)] the defendant's education and intelligence, and, significantly, [(6)] the defendant's belief that no incriminating evidence will be found.

*United States v. Chemaly*, 741 F.2d 1346, 1352 (11th Cir. 1984). "While knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the *sine qua non* of an effective consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S. Ct. 2041, 2048 (1973). Thus, the government is not required to prove that the suspect was aware of the right to refuse to consent. *Chemaly,* 741 F.2d at 1353.

The district court properly concluded that Peguero's consent to the search of his truck was given freely and voluntarily. Specifically, the dashboard video and officer's testimony indicate that the entire encounter was free of coercive

6

influence.  Peguero freely conversed with the officer, laughed and made small talk, and at one point offered to let the officer search an ice chest in his truck.  The officer also specifically noted that Peguero was cooperative and polite during the encounter.  Although the officer was in uniform, he did not display a gun, did not put Peguero in his patrol car, did not handcuff him, did not threaten him, did not imply that there would be consequences for refusing the search, did not physically restrain him, and did not withhold his identification documents.  *See id.* at 1352.  The record does not indicate whether the officer explicitly told Peguero that he could refuse consent to the search, but the government was not required to prove that Peguero was expressly informed that he could refuse.  Given the well-concealed location of the hidden compartment in the gas tank, Peguero may have thought that the officer would not find the cocaine.  Peguero's consent to the search was voluntary.  The district court's order denying Peguero's motion to suppress is

**AFFIRMED.**