[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-13454
Non-Argument Calendar
_____

D.C. Docket No. 2:15-cr-00193-KD-B-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MAURICE ODELL BROWN,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(July 10, 2017)

Before JULIE CARNES, JILL PRYOR, and ANDERSON, Circuit Judges.

PER CURIAM:

Maurice Brown appeals his conviction for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  Brown contends that the district court erred in denying his motion to suppress the gun found in the trunk of his vehicle.  He argues that the gun should have been suppressed because it was obtained during an unreasonable investigatory stop, and the unreasonableness of the stop rendered his consent involuntary.

We review the denial of a motion to suppress under a mixed standard, reviewing factual findings for clear error, and the application of facts to the law *de novo*.  *United States v. Bervaldi*, 226 F.3d 1256, 1262 (11th Cir. 2000).  In considering a motion to suppress, we construe all facts in the light most favorable to the prevailing party below.  *Id.*  When facts have been presented through testimony, the credibility of the witness is in the province of the district court as the factfinder, and we will refrain from rejecting the court's credibility determinations unless the evidence is "contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it."  *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (quotation omitted).  We may affirm the denial of a motion to suppress on any ground supported by the record.  *United States v. Caraballo*, 595 F.3d 1214, 1222 (11th Cir. 2010).

2

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures.  U.S. Const. amend. IV.  A search conducted by means of consent is generally valid, as long as the consent is voluntary.  *United States v. Kapperman*, 764 F.2d 786, 793 (11th Cir. 1985).

Whether a suspect voluntarily consents to a search is a question of fact determined under the totality of the facts and circumstances.  *United States v. Blake*, 888 F.2d 795, 798 (11th Cir. 1989).  The government bears the burden of proving that consent existed and was given freely and voluntarily, not merely as "a function of acquiescence to a claim of lawful authority."  *Id.*  In determining whether consent is voluntary, we consider factors including:

> [the] voluntariness of the defendant's custodial status, the presence of coercive police procedure, the extent and level of the defendant's cooperation with police, the defendant's awareness of his right to refuse to consent to the search, the defendant's education and intelligence, and, significantly, the defendant's belief that no incriminating evidence will be found.

*Id.* at 789-99.  Failure to inform a suspect of his right to refuse consent, in the absence of any coercive behavior, does not render consent involuntary.  *United States v. Zapata*, 180 F.3d 1237, 1241 (11th Cir. 1999).  Nevertheless, a suspect's knowledge of his right to refuse consent, or lack thereof, is a factor to be considered in assessing voluntariness.  *United States v. Chemaly*, 741 F.2d 1346, 1353 (11th Cir. 1984).

3

Not all police-citizen encounters during which a search occurs constitute a "seizure" under the Fourth Amendment. *See United States v. Jordan*, 635 F.3d 1181, 1185 (11th Cir. 2011). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may [a court] conclude that a 'seizure' has occurred." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). Police-citizen encounters fall into three categories: (1) consensual exchanges involving no coercion or detention, (2) brief seizures or investigatory detentions, and (3) full-scale arrests. *Jordan*, 635 F.3d at 1185. The first type of encounter does not implicate the Fourth Amendment. *Id.* at 1186. The second type, a *Terry* stop, permits a "brief, warrantless, investigatory stop of an individual" based on "a reasonable, articulable suspicion that criminal activity is afoot." *United States v. Hunter*, 291 F.3d 1302, 1305-06 (11th Cir. 2002).

Whether a seizure has occurred depends on whether a reasonable person, in light of the totality of the circumstances, would have believed that he was not free to leave. *United States v. De La Rosa*, 922 F.2d 675, 678 (11th Cir. 1991). Whether a reasonable person would have believed that he is not free to leave is a question of law that we review *de novo*, although findings of fact bear on this larger question. *United States v. Espinosa-Guerra*, 805 F.2d 1502, 1507 n.18 (11th Cir. 1986).

4

Where an investigatory stop has occurred, and Fourth Amendment scrutiny is triggered, its reasonableness is a question of law that we review *de novo*. *See Ziegler v. Martin Cnty. Sch. Dist.*, 831 F.3d 1309, 1319 (11th Cir. 2016). We assess the reasonableness of an investigatory stop under a two-part inquiry. *United States v. Acosta*, 363 F.3d 1141, 1144 (11th Cir. 2004). Under the first part of the inquiry, we examine "whether the officer's action was justified at its inception," which requires the officer's reasonable suspicion that the defendant had engaged, or was about to engage, in a crime. *Id.* (quotations omitted). A less demanding standard than probable cause, reasonable suspicion exists when, under the totality of the facts and circumstances, an officer has a "particularized and objective basis" for suspecting wrongdoing. *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quotation omitted).

Under the second part of the inquiry, we examine whether the stop was "reasonably related in scope to the circumstances which justified the interference in the first place" by applying four non-exclusive factors. *Acosta*, 363 F.3d 1145-46 (quotations omitted). First, we consider "the law enforcement purposes served by the detention," assessing whether the officer employed a method of investigation that was "likely to confirm or dispel [his] suspicions quickly, and with a minimum of interference." *Id.* at 1146 (quotations omitted). We then look to whether the police were diligent in their investigation, completing it without

undue delay. *Id.* at 1146. We next ask "whether the scope and intrusiveness of the detention exceeded the amount reasonably needed by police to ensure their personal safety." *Id.* Finally, we assess whether the duration of the detention was reasonable. *Id.* at 1147. Although there is no bright-line rule as to duration, we have held stops of thirty to seventy-five minutes to be reasonable. *Id.* at 1147-48.

The district court did not clearly err in finding that Brown voluntarily consented to the search of the vehicle. Brown gave Stallings verbal permission to search the vehicle, which was later memorialized in a written statement that Brown signed. Brown was not in custody at the time of the search, and he cooperated fully with the investigating officer, Eric Stallings, throughout the encounter. For instance, Brown indicated that paperwork for the car was in the glovebox, popped the trunk for Stallings without prompting, and examined some of the items in the trunk with Stallings. Such actions go beyond mere acquiescence to Stallings's claim of lawful authority. The record reflects a conversational encounter that was free from threats, abuse, or other coercive techniques. Although Stallings did take possession of Brown's keys, he did so only after Brown had given him verbal permission to search the interior of the vehicle, undermining any argument that Brown's consent resulted from coercion. On these facts, and crediting Stallings's testimony, the district did not clearly err in concluding that there was "no evidence of duress" and that "the search was consensual."

Brown's consent was not tainted by an unreasonable investigatory detention. The district court did not determine whether Brown was free to leave when he consented. But even assuming that he was not, the investigatory stop in which the search occurred was reasonable. Brown's vehicle had open containers of alcohol on it and in it, giving rise to Stallings's reasonable suspicion that a crime was underway and providing the initial justification for the stop. Shortly after Stallings made contact with Brown, an occupant of Brown's vehicle was to be found in possession of marijuana and arrested by another officer. To the extent Brown was detained at the time of the consent, the scope of his detention was reasonable in relation to these underlying circumstances. Stallings promptly employed non-intrusive investigative techniques that were likely to quickly confirm or dispel his suspicions—asking Brown and Houston questions about the alcohol, patting them down for weapons, checking Brown's identification, running a check for outstanding warrants, and checking the vehicle's paperwork. Stallings acted diligently in carrying out these steps, one after the other. The duration of the stop, which lasted approximately 20 minutes, further supports its reasonableness.

Accordingly, we affirm Brown's conviction.

**AFFIRMED.**

7