[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-12807

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JAMES CHRISTOPHER WHITE,

Defendant- Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 5:22-cr-00026-MW-MJF-1

_____

Before JILL PRYOR, NEWSOM, and BRANCH, Circuit Judges.

PER CURIAM:

James Christopher White appeals his convictions for the production of child pornography, in violation of 18 U.S.C. § 2251(a), (e), and commission of a felony while registered as a sex offender, in violation of 18 U.S.C. § 2260A.  On appeal, White argues that the district court erred by refusing to suppress evidence of child pornography found on his second cell phone, a hard drive, and a thumb drive.  In particular, he asserts (1) that he did not voluntarily consent to having his second phone searched, and (2) that evidence contained on the hard drive and flash drive was not admissible under either the independent-source or inevitable-discovery exceptions to the warrant requirement.  After careful review, we affirm the district court.

The facts are known to the parties, and we repeat them here only as necessary to decide the case.

**I**

We review a district court's denial of a motion to suppress evidence under a mixed standard, reviewing the court's fact-finding for clear error and the application of the law to those facts de novo. *United States v. Lewis*, 674 F.3d 1298, 1302–03 (11th Cir. 2012).  We grant substantial deference to the factfinder's credibility determinations, construing all facts in the light most favorable to the prevailing party below.  *Id.* at 1303.  We must accept the version of events adopted by the district court "unless it is contrary to the laws

of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (quotation marks omitted).

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. It is well settled that officers may search an individual or his property without a warrant if they obtain the voluntary consent of the individual in question. *United States v. Blake*, 888 F.2d 795, 798 (11th Cir. 1989). Still, in such circumstances, the government has the burden to prove that consent was freely and voluntarily given. *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968). We've said that factors relevant to evaluating whether consent was "freely and voluntarily given" include: (1) whether the person giving consent was under arrest; (2) "the presence of coercive police procedure"; (3) whether the person was cooperating with police; (4) the person's awareness of his right to refuse consent; (5) the person's education and intelligence; and (6) the person's "belief that no incriminating evidence will be found." *United States v. Chemaly*, 741 F.2d 1346, 1352 (11th Cir. 1984) (quotation marks omitted). Significantly, although it is a factor we consider, the government is not required to prove that the suspect was aware of the right to refuse consent. *Id*. at 1353. "We review the district court's determination that [the defendant's] consent was voluntary under the clearly erroneous standard." *Id*. at 1352.

Additionally, there is no basis for suppressing evidence obtained by unconstitutional methods "if the government can prove that the evidence would have been obtained inevitably." *Nix v.*

*Williams*, 467 U.S. 431, 447 (1984).  Thus, under the "inevitable discovery" or "ultimate discovery" exception, the government may introduce evidence that was obtained through an illegal search if it shows (1) "by a preponderance of the evidence that if there had been no constitutional violation, the evidence in question would have been discovered by lawful means," and (2) "that the lawful means which made discovery inevitable were being actively pursued prior to the occurrence of the illegal conduct." *United States v. Watkins*, 13 F.4th 1202, 1211 (11th Cir. 2021) (quotation marks omitted).[1]  To meet the preponderance-of-the-evidence standard, the government need not show an "[a]bsolute certainty" that the evidence would have been discovered, just "that it is more likely than not the evidence would have been discovered without the violation." *Id.*

## II

### A

First up, the second cellphone.  We hold that the district court correctly concluded that White consented to the search of his second cellphone.  Although White argues that the officers exceeded the scope of his consent after he allowed them into his home, this assertion is unavailing because the officers subsequently

---

[1] Notably, the active-pursuit requirement does not "require that police have already planned the particular search" but rather "that the police would have discovered the evidence by virtue of ordinary investigations of evidence or leads already in their possession." *Watkins*, 13 F.4th at 1211 (quotation marks omitted).

obtained his voluntary consent to search his bedroom and, as relevant here, his second cellphone. *Blake*, 888 F.2d at 798. Indeed, at the suppression hearing, Agent Crecelius testified that after he examined White's first phone in the living room, he asked to see a second phone that he spotted on White's bed. Agent Crecelius also testified that White initially attempted to convince him that a search of the second phone was unnecessary because it was an "old one that [White didn't] use anymore." But, per Agent Crecelius's testimony, White then invited the officers to his bedroom, opened the door, picked up his second phone off the bed, and handed it to the officers. What's more, at the suppression hearing, White confirmed that he never told the officers that they could not inspect his second phone.

The district court also did not clearly err by finding that White's consent to search the second phone was voluntary. *Chemaly*, 741 F.2d at 1352. Significantly, each of the *Chemaly* factors weighs toward affirming the district court's conclusion that White's consent was "freely and voluntarily given." *Id*.

The first *Chemaly* factor straightforwardly suggests that White's consent was voluntary, as White was not under arrest at the time that he gave consent. *Id*.

The second factor—which probes the presence of coercive police procedure—also suggests that White's consent was voluntary. *Id*. As we've explained before, the presence of armed, uniformed officers is not enough to support a finding of coercion, especially when no evidence shows that the officers threatened

White, raised their voices, or brandished their guns. *Id.*; *see also United States v. Espinosa-Orlando*, 704 F.2d 507, 513 (11th Cir. 1983). The evidence further indicates that the officers were non-threatening in their interactions with White, phrasing all requests in the form of questions—not commands—to obtain White's consent in the absence of a search warrant. This important distinction supports the district court's finding that White's decision to hand over the phone was consensual, as he could have more easily refused their requests than direct commands. *See Chemaly*, 741 F.2d at 1352.

As for the third *Chemaly* factor, White's cooperation with law enforcement—for instance, guiding the officers throughout his home, leading the officers to his bedroom, opening the bedroom door, and turning over the second phone without incident—also suggests that his consent was voluntary. *See id.*

Regarding the fourth factor, although White testified that he believed he could not say no to the officers, the court did not clearly err by finding that White's assertion lacked credibility. *See id.* Due to White's criminal history, he was familiar with the legal system and his basic rights. *See id.* Additionally, White's refusal to respond to Detective Mathis's earlier question about whether he masturbated to letters from a resident at the Florida Civil Commitment Center showed that White understood that he was not obligated to comply with all of law enforcement's requests. *See id.*

The fifth *Chemaly* factor also indicates that White's consent was voluntary, as White earned his high school diploma, could read and write English, and was familiar with the legal system. *See*

*id.* White's intelligence was likewise apparent to the court through his testimony, leaving the court with no doubt that White understood "basic principles" like consent. Moreover, White's apparent attempt at diverting the officers' attention away from the bedroom—by volunteering information about a toybox in the living room—further exhibited his intelligence and awareness of the situation he faced. *See id.*

The sixth and final *Chemaly* factor also suggests that White voluntarily consented when he handed over his second phone to Agent Crecelius. Based on testimony describing White's body language and general demeanor before and during the search of his second phone, the district court concluded the evidence did not indicate that "he was concerned that they were going to find something on it." Instead, according to the district court, White's behavior during the interaction reflected an attitude more akin to "I've got nothing to hide." We see no reason to conclude this factual finding was clearly erroneous and, in any event, hold that all the other *Chemaly* factors support the district court's conclusion that the search of White's second phone was voluntary. *See id.*

**B**

Next, the hard drive and thumb drive. Because the officers' search of White's second phone was lawful—based on White's voluntary consent to the search—the district court correctly determined that the discovery of the hard drive and thumb drive was inevitable. Detective Mathis had already verified that Agent Crecelius discovered child pornography evidence on the second phone

when he asked White—without Mirandizing him—whether there were additional electronic devices in the home containing child pornography. *See Watkins*, 13 F.4th at 1211. Thus, even if White had not relinquished the hard drive and thumb drive at that point, the officers could have obtained a warrant to search White's bedroom for them based on the lawfully obtained child pornography evidence already in their possession. *See id*. Significantly, the evidence also indicates that the thumb drive was on White's bed, and the hard drive was stored, unobscured, on a shelf near the bed. For those reasons, the district court did not err when it found "that it is more likely than not" that both devices would have been discovered during a subsequent search of White's bedroom. *See id*.

**AFFIRMED.**