[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15773
Non-Argument Calendar
_____

D.C. Docket No. 8:13-cr-00187-JDW-AEP-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CANETHA JOHNSON,
VANESSA COOPER,
SELENA BLANCHARD,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(April 24, 2015)

Before MARCUS, WILLIAM PRYOR, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Canetha Johnson, Vanessa Cooper, and Selena Blanchard appeal their convictions for possession and conspiracy to possess with intent to distribute 500 grams or more of methamphetamine following a jury trial.

Before trial, the defendants filed two motions to suppress evidence recovered from the hotel room where they were arrested. In denying the motions, the district court found, with respect to the first motion, that Cooper gave voluntary consent for agents from the Drug Enforcement Administration ("DEA") to enter the hotel room; and, with respect to the second motion, that the initial search of the belongings and luggage inside the room was valid as a search incident to arrest and that DEA then conducted a lawful custodial seizure and subsequent inventory search of the items.

On appeal, Cooper challenges the district court's denial of the motions to suppress. Blanchard challenges the denial of the motions to suppress as well as the sufficiency of the evidence against her as to the substantive possession offense. And Johnson challenges the sufficiency of the evidence for her convictions on both the conspiracy and substantive offenses. After careful review of the record and the briefs, we affirm all convictions.

## I.    General Background

Briefly stated, the facts giving rise to this case are as follows. On April 1, 2013, DEA agents in San Diego, California, informed law enforcement in Tampa,

2

Florida, that three drug couriers would soon be flying into Tampa carrying methamphetamine. The three drug couriers were identified as the defendants. DEA agents set up surveillance at the Tampa International Airport.

When the defendants arrived the next day, they were observed exiting the terminal and getting into a car driven by Raul Carbajal, a co-defendant who later pleaded guilty and testified at trial. Carbajal drove the defendants to a local hotel and dropped them off. Thereafter, police stopped and searched Carbajal's vehicle, finding three cucumber-shaped packages containing a total of 834.1 grams of pure methamphetamine.

Following his arrest, Carbajal told police that he had received the methamphetamine from the defendants earlier that day. Carbajal stated the defendants had secreted the drugs inside their bodies in order to pass through security. Carbajal also admitted that he had picked up numerous drug couriers at the Tampa International Airport over the previous six months, including Cooper and Blanchard on several occasions.

Based on Carbajal's statements, DEA agents who had remained at the hotel went to the defendants' hotel room. After being questioning by the agents, the three defendants were arrested. The agents conducted an initial search of the defendants' belongings at the hotel and then took the items into custody.

3

A federal grand jury indicted the defendants on two counts:  conspiracy to possess with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), and 846 ("Count One"); and possession with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii) ("Count Two").

Cooper filed a motion to suppress, which Johnson and Blanchard adopted. In the motion, Cooper challenged the DEA agents' warrantless entry into the hotel room.  After a hearing, the district court denied the motion on the basis that Cooper freely and voluntarily consented to the agents' entry.  Then, Blanchard and Cooper filed motions to suppress evidence obtained from a search of the hotel room and their personal belongings, such as travel receipts and other documentation.  After a second hearing, the district court found that the initial searches were lawful as incident to arrest, and that, subsequently, the items were lawfully seized, taken into DEA custody, and searched in order to inventory the contents.

Following a trial, a jury returned a guilty verdict on both counts against each defendant.   Johnson, Blanchard, and Cooper were sentenced to terms of imprisonment of 168 months, 192 months, and 204 months, respectively.  These appeals followed.

## II.    Denial of the First Motion to Suppress (Cooper and Blanchard)

Cooper and Blanchard argue the entry into the hotel room was invalid because they did not consent to entry.  Further, they contend, any consent obtained by DEA agents was not voluntarily given because it was the result of acquiescence to a show of police authority.

In reviewing the denial of a motion to suppress, we review the district court's findings of fact for clear error and its application of the law to those facts *de novo*, construing all facts in the light most favorable to the party that prevailed below—here, the government.  *United States v. Gibson*, 708 F.3d 1256, 1274 (11th Cir. 2013).

The Fourth Amendment protects an individual's reasonable expectation of privacy in a hotel room.[1]  *United States v. Mercer*, 541 F.3d 1070, 1075 (11th Cir. 2008).  Without a warrant, "a search is reasonable only if it falls within a specific exception to the warrant requirement."  *United States v. Watkins*, 760 F.3d 1271, 1278 (11th Cir. 2014) (quotation marks omitted).  One such exception is a warrantless search or entry based on valid consent.  *Id.* at 1279.  Thus, a warrantless search or entry "does not violate the Fourth Amendment where there is voluntary consent given by a person with authority."  *Bates v. Harvey*, 518 F.3d 1233, 1243 (11th Cir. 2008).

---

[1]   There is no dispute in this case that the defendants had a reasonable expectation of privacy in the hotel room.

5

Whether consent is "voluntary" is a factual determination to be made based on the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248-49, 93 S. Ct. 2041, 2059 (1973); *United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir. 1991) (*en banc*).  The government bears the burden of proving that consent was voluntarily and freely given and was not the product of coercion or mere submission to police authority.  *United States v. Blake*, 888 F.2d 795, 798 (11th Cir. 1989).  We review the district court's factual findings as to whether voluntary consent was given for clear error.  *Id.*

To assist courts in determining whether consent was voluntary in a specific case, we have identified a non-exhaustive list of relevant factors, including the following:

> voluntariness of the defendant's custodial status, the presence of coercive police procedure, the extent and level of the defendant's cooperation with police, the defendant's awareness of his right to refuse to consent to the search, the defendant's education and intelligence, and, significantly, the defendant's belief that no incriminating evidence will be found.

*Id.* (quoting others sources).

The issue of consent often turns on credibility determinations made by the district court.  In general, we afford considerable deference to the district court's credibility determinations because the court "personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of

6

witnesses." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002).

And where, as here, opposing parties present directly conflicting accounts, the

district court's choice of whom to believe is typically conclusive unless the court

credits testimony that, because it is exceedingly improbable or contrary to the laws

of nature, no reasonable factfinder could accept as true. *Id.*

Here, the district court did not err in denying the first motion to suppress on

the basis that the agents obtained voluntary consent to enter the hotel room. At the

suppression hearing, the district court was presented with two conflicting versions

of events. According to the agents' testimony, as summarized by the district court,

> the plan was to make contact with Cooper and her co-defendants and solicit their cooperation, failing which they would be arrested. To effect this, Gordon initiated a "low key approach" to the hotel room, in plain clothes and without weapons drawn. Agents Burnside and McGee had a hotel employee knock on the door to Room 509 under the pretense of room service and when the door opened, the employee stepped away and the agents identified themselves, exhibited their credentials and explained they were conducting a follow-up investigation. Within a matter of seconds, Gordon joined them at the door, identified himself to Cooper, and asked to speak with her inside. According to Gordon, the conversation was very cordial, Cooper invited them in, walked over to the bed and sat down. The agents entered and were joined by three more. Two agents were assigned to question each Defendant. Cooper was questioned in the room, while Johnson and Blanchard were questioned outside.

By contrast, according to Cooper's and Johnson's testimony, when Johnson opened the door expecting to find a hotel employee, two agents aggressively pushed past her, came into the room, and demanded to speak with Cooper. When Cooper identified herself, an agent grabbed her by the arm, pulled her outside the room, and began questioning her about the drugs.

The district court resolved all conflicts in the evidence in favor of the government's witnesses, despite noting some inconsistencies in the DEA agents' testimony on collateral issues. The court found Cooper and Johnson's version of events "simply not credible." In crediting the agents' accounts, the district court did not choose testimony that was so improbable that no reasonable factfinder could accept it as true. *See Ramirez-Chilel*, 289 F.3d at 749. The agents and the defendants simply gave conflicting accounts of the interaction at the hotel room, and the court set forth plausible explanations for why it credited the agents' testimony over that of the defendants. *See id.* at 749-50. Therefore, we defer to the district court's credibility determinations and disregard Cooper's and Blanchard's reliance on testimony that is inconsistent with the court's factual findings.

The district court's finding that Cooper's consent was voluntary and was not the product of coercion is well supported by the record. Despite opining that the unexpected appearance of three DEA agents outside the hotel-room door could

have been "intimidating, if not coercive," the court nonetheless determined that Cooper's consent was voluntary. The court referenced a number of factors supporting the voluntariness of consent, including the following: the agents were in plain clothes with no weapons visible; they displayed their credentials, identified themselves, and explained that they were conducting a narcotics investigation and wished to speak with the defendants; the conversation was calm, cordial, and non-threatening; Cooper's testimony demonstrated that she was intelligent and capable of refusing consent; and no contraband or illegal substances were found in the room, indicating that the defendants would not have been motivated to prevent entry to law enforcement. *See Blake*, 888 F.2d at 798. The fact that the agents did not advise the defendants of their right to refuse consent does not, alone, vitiate that consent. *See Schneckloth*, 412 U.S. at 247-49, 93 S. Ct. at 2058-59. In sum, the circumstances do not show that Cooper was intimidated or forced into consenting to the entry by a "show of authority" from the officers.

Blanchard and Cooper argue that the agents engaged in "trickery" by having a hotel employee knock on the door to the hotel room and then, once the door was opened, entering the room based on only the defendants' failure to object. *See Ramirez-Chilel*, 289 F.3d at 752 ("[T]he government may not show consent to enter from the defendant's failure to object to the entry. To do so would be to

9

justify entry by consent and consent by entry." (quotation marks omitted)); *see also*

*United States v. Bautista*, 362 F.3d 584, 591-92 (9th Cir. 2004) (same).

Under the circumstances, the "trickery" engaged in by the DEA to have the defendants open the door does not undermine the consent obtained thereafter. Nor do the facts show a simple failure to object to entry. The facts, as found by the district court, demonstrate that after the door was opened, Cooper and the agents engaged in a cordial conversation, the agents calmly explained the purpose of their presence and requested entry, and then Cooper, with knowledge that the agents were conducting a narcotics investigation, invited the agents into the room. Even assuming that this "invitation" was non-verbal, Cooper gave officers the type of "implied consent" that we have found sufficiently voluntary in similar circumstances. *See Ramirez-Chilel*, 289 F.3d at 751-52 (finding a defendant's "yielding the right-of-way" to officers at the front door to be voluntary consent to enter where four officers were present and no guns were drawn).

In contrast to the purported consent at issue in *Bautista*, Cooper's consent was not simply the product of compliance with police demands. *See Bautista*, 362 F.3d at 591-92 (holding that opening the door in response to a police demand and then failing to object when officers entered was not voluntary consent); *see also Tobin*, 923 F.2d at 1512 (explaining that courts have held that consent was not voluntary in "cases in which police have used their position to demand entry");

10

*United States v. Edmondson*, 791 F.2d 1512, 1514-15 (11th Cir. 1986) (finding a defendant's "consent"—opening the door, stepping back, and placing his hands upon his head—involuntary where it was prompted by a number of Federal Bureau of Investigation agents who had surrounded Edmondson's apartment, drawn their weapons, and knocked on the door yelling, "FBI. Open the door."). Here, in view of the court's factual findings, the DEA did not demand entry and did not enter before receiving implied or express consent from Cooper.

In sum, the district court did not clearly err in finding that Cooper voluntarily consented to the agents' entry into the hotel room.

## III.    Denial of the Second Motion to Suppress (Cooper and Blanchard)

Cooper and Blanchard also argue that the district court erred in denying their motions to suppress evidence found during a search of their luggage in the hotel room. The search, they contend, cannot be justified as a search incident to arrest because neither Cooper nor Blanchard could have accessed their luggage when they were arrested.

A search incident to a lawful arrest is a well-established exception to the warrant requirement. *Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, 1716 (2009). Under this exception, "officers may only search areas within the arrestee's control, construed as the area from within which [s]he might gain possession of a

weapon or destructible evidence." *Holmes v. Kucynda*, 321 F.3d 1069, 1082 (11th Cir. 2003) (brackets and internal quotation marks omitted).

We do not decide whether the DEA agents' search of the defendants' personal belongings exceeded the permissible scope of a search incident to arrest because Cooper and Blanchard do not challenge the district court's determination that, following the defendants' arrest, DEA agents took custody of the personal belongings and later conducted a lawful inventory search. Any evidence obtained from the belongings introduced at trial either was or could have been discovered during the inventory search. *See United States v. Virden*, 488 F.3d 1317, 1322 (11th Cir. 2007) ("Under the inevitable discovery exception, if the prosecution can establish by a preponderance of the evidence that the information would have ultimately been recovered by lawful means, the evidence will be admissible."). Therefore, we affirm the denial of the second motion to suppress on this alternative basis.

"Inventory searches of an arrestee's personal property are a well-defined exception to the Fourth Amendment warrant requirement." *United States v. Farley*, 607 F.3d 1294, 1333 (11th Cir. 2010) (internal quotation marks omitted). When police take custody of a defendant's belongings, such as a bag or suitcase, they may open the item and itemize its contents pursuant to standard inventory procedures. *Id.* Inventory searches of property lawfully in police custody are

12

permissible "as long as that search is consistent with the police caretaking function." *United States v. O'Bryant*, 775 F.2d 1528, 1534 (11th Cir. 1985); *see United States v. Khoury*, 901 F.2d 948, 958 (11th Cir. 1990).   In addition, the former Fifth Circuit "has consistently recognized that the fourth amendment is not violated when the police take custody of the property of persons they arrest to store that property for safekeeping." *United States v. Gravitt*, 484 F.2d 375, 378 (5th Cir. 1973)[2]; *see United States v. Lipscomb*, 435 F.2d 795, 799-801 (5th Cir. 1970) (holding that it was reasonable for "police officers to take all the arrested couple's personal belongings" from a hotel room and bring the belongings to police headquarters).

Here, Cooper and Blanchard have abandoned any challenge to the validity of the custodial seizure and subsequent inventory search.   Blanchard's brief does not address the issue at all.   *See United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) (holding that issues not raised in an appellant's initial brief are deemed abandoned).   And, while Cooper asserts in her issue statement that there was no "immediate need to preserve evidence," along with the bare statement that court erred in finding the custodial seizure and inventory search valid, she did not, thereafter, develop any supporting arguments or cite relevant authority.   "We have long held that an appellant abandons a claim when [s]he either makes only passing

---

[2]  We are bound by all Fifth Circuit decisions issued before October 1, 1981.  *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

13

references to it or raises it in a perfunctory manner without supporting arguments and authority." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). Consequently, we affirm the denial of the second motion to suppress on this alternative basis. *See id.* at 683; *cf. Farley*, 607 F.3d at 1333 n.25 ("Because the inventory search ground is dispositive, we need not address the search incident to arrest ground.").

## IV.    Sufficiency of the Evidence (Blanchard and Johnson)

We review *de novo* the sufficiency of the evidence to support a conviction. *United States v. Howard*, 742 F.3d 1334, 1341 (11th Cir. 2014). We view the evidence presented at trial, and draw all reasonable inferences therefrom, in the light most favorable to the government. *United States v. Hansen*, 262 F.3d 1217, 1236 (11th Cir. 2001). We will not disturb a guilty verdict unless, given the evidence in the record, no reasonable trier of fact could have found that the evidence establishes the defendant's guilt. *Howard*, 742 F.3d at 1341; *United States v. Rodriguez*, 218 F.3d 1243, 1244 (11th Cir. 2000). "We do not second guess the jury's determination of credibility issues. Nor will we reverse a conviction simply because the defendant put forth a reasonable hypothesis of innocence at trial." *Howard*, 742 F.3d at 1342 (citations and internal quotation marks omitted).

14

To sustain a conviction for possession with intent to distribute illegal substances under 21 U.S.C. § 841(a)(1), "the government must show that the defendant had (1) knowing (2) possession of the drugs and (3) an intent to distribute them." *United States v. Capers*, 708 F.3d 1286, 1297 (11th Cir. 2013). "To sustain a conviction for conspiracy to distribute drugs in violation of 21 U.S.C. § 846, the government must prove that 1) an agreement existed between two or more people to distribute the drugs; 2) that the defendant at issue knew of the conspiratorial goal; and 3) that he knowingly joined or participated in the illegal venture." *United States v. Reeves*, 742 F.3d 487, 497 (11th Cir. 2014) (internal quotation marks omitted).

## A.

Johnson argues that the only evidence linking her to the drug-trafficking conspiracy was her statement admitting to bringing "the stuff" from San Diego to Tampa. Other than this uncorroborated statement, she asserts, only circumstantial evidence, such as Johnson's presence in Carbajal's car and her association with Blanchard and Cooper, supported the finding that she aided the conspiracy. *See United States v. Lyons*, 53 F.3d 1198, 1201 (11th Cir. 1995) ("[C]lose association with a co-conspirator or mere presence at the illegal sale of drugs is, by itself, insufficient evidence to support a conviction for conspiracy to possess and distribute drugs."). Without additional evidence of her participation, Johnson

15

contends, the government failed to present sufficient evidence to support her conviction for the conspiracy offense.

We disagree that the evidence was insufficient. Instead, ample evidence was presented for a reasonable jury to conclude that Johnson knowingly participated in a drug-smuggling conspiracy along with Cooper and Blanchard. Before the defendants flew into Tampa on April 2, Carbajal was informed by his cousin, Roberto Carbajal, the head of the drug-smuggling operation, that three women drug couriers would be flying in from San Diego. When the defendants arrived at the airport, DEA agents observed Carbajal pick up them up and drive them to the hotel. On the way to the hotel, the defendants put the methamphetamine on the car floor. For their part, each of the defendants was to be paid $1,100. At the hotel, Johnson admitted to a DEA agent that she was in Tampa to "bring the stuff," that she expected to be paid $1,100 or $1,200 for delivering "the stuff," and that she had delivered "the stuff" to Carbajal. The agent testified that it was clear to him that "the stuff" referred to methamphetamine.

In addition, a reasonable jury could have inferred from the shape and number of packages recovered from Carbajal's car that Blanchard, Cooper, and Johnson each personally transported one of the packages of meth. Janette Vega, an admitted drug courier in the conspiracy who had previously worked with Cooper

16

and Blanchard, testified about how the drug-smuggling operation packaged drugs in a shape that allowed for vaginal smuggling.

Viewing this evidence in the light most favorable to the government, a reasonable jury could have concluded that Johnson was not just associated with co-conspirators or merely present in an area where a drug transaction occurred, but instead was a knowing and voluntary participant in a conspiracy to distribute methamphetamine. *See Reeves*, 742 F.3d at 497; *Hansen*, 262 F.3d at 1236. Therefore, the district court did not err in denying Johnson's motion for judgment of acquittal as to the sufficiency of the evidence for her conspiracy conviction.

**B.**

Blanchard and Johnson argue that their mere presence in the back seat of a car that contained contraband was insufficient to support a conviction for the substantive offense of possession with intent to distribute. *See United States v. Stanley*, 24 F.3d 1314, 1319-20 (11th Cir. 1994) (holding that "something more than mere presence in the car" in which drugs are found is required to sustain a conviction for the substantive offense of possession with intent to distribute). The government, they assert, did not present any evidence that Blanchard or Johnson either actually or constructively possessed the methamphetamine found in Carbajal's vehicle. At best, they contend, the government's evidence showed that they simply had knowledge of the methamphetamine in the vehicle.

17

Once again, we disagree. The evidence shows more than Blanchard's and Johnson's mere presence in the car and simple knowledge of the methamphetamine. As explained above, the number of packages and their unique shape suggests that each of the three defendants actually possessed the methamphetamine before placing it on the floor of Carbajal's car. This was corroborated by the fact that Carbajal intended to pay each of the women an equal amount. In addition, Johnson stated that she had delivered "the stuff" to Carbajal and expected to be paid. There was also evidence that Blanchard previously had engaged in similar transactions with Carbajal. Based on these facts, a reasonable jury could have determined that both Johnson and Blanchard each knowingly possessed methamphetamine.

Even if the evidence was somehow insufficient to show possession by either Blanchard or Johnson, the evidence was clearly sufficient to show that the methamphetamine came from at least one of the three defendants. And the jury in this case was instructed on both *Pinkerton*[3] and aiding-and-abetting theories of liability for the substantive possession count. Under *Pinkerton*, "Each party to a continuing conspiracy may be vicariously liable for substantive criminal offenses committed by a co-conspirator during the course and in the furtherance of the conspiracy, notwithstanding the party's non-participation in the offenses or lack of

---

[3] *Pinkerton v. United States*, 328 U.S. 640, 66 S. Ct. 1180 (1946).

18

knowledge thereof." *United States v. Mothersill*, 87 F.3d 1214, 1218 (11th Cir. 1996). The individual culpability of a particular conspirator does not need to be assessed, "provided the substantive crime was a reasonably foreseeable consequence of the conspiracy." *Id.* (internal quotation marks omitted).

Given what we have discussed previously, the evidence was sufficient for a reasonable jury to find that both Blanchard and Johnson were guilty of conspiracy and that the substantive crime of possession of methamphetamine with intent to distribute was a reasonably foreseeable consequence of a drug-trafficking conspiracy. *See id.* Consequently, Blanchard and Johnson remain liable even if they did not actually possess or distribute the methamphetamine. *See id.* Thus, the district court did not err in denying their motions for judgment of acquittal.

## V.    Conclusion

For the reasons stated, we affirm all convictions.

**AFFIRMED.**