**David Jessie GRAVES, Petitioner-Appellee,**

v.

**Dr. George J. BETO, Director, Texas Department of Corrections, Respondent-Appellant.**

No. 28502.

United States Court of Appeals,
Fifth Circuit.

April 3, 1970.

Rehearing Denied and Rehearing En
Banc Denied May 26, 1970.

Dunklin Sullivan, Asst. Atty. Gen., Crawford C. Martin, Atty. Gen. of Texas, Nola White, First Asst. Atty. Gen., Pat Bailey, Exec. Asst. Atty. Gen., Robert C. Flowers, Asst. Atty. Gen., Austin, Tex., for respondent-appellant.

Weldon Holcomb, Tyler, Tex., for petitioner-appellee.

David Jessie Graves, in pro per.

Before WISDOM, GOLDBERG and INGRAHAM, Circuit Judges.

WISDOM, Circuit Judge.

In this case the Court scrutinizes the efficacy of a consent to a blood test secured by official stratagem.

A Texas jury convicted David Jessie Graves of the offense of rape and assessed a punishment of twelve years imprisonment. As part of its evidence at trial, the state proved that Graves's blood type matched that of blood discovered on the bed covers where the rape took place and differed from that of the prosecutrix. A chemist testified that only 13.5 percent of the people in the area had Graves's blood type (B). After exhausting his state remedies, Graves filed an application for writ of habeas corpus in federal district court. The district court granted the writ, finding that state authorities had unconstitutionally obtained from Graves the blood sample that disclosed his blood type. We affirm.

Graves was arrested and confined in Plano, Texas, in 1963 on a charge of public drunkenness. Shortly after his arrest, the police received a report that an elderly woman had been raped in her home near Plano. Her description of her assailant closely fitted Graves. Since blood had been found on the bed covers, the Plano police chief requested Graves's permission to take a sample of his blood.

Graves refused at first, but finally consented when he was informed that the sample would be used only to determine the alcoholic content of his blood. At the habeas corpus hearing, the following colloquy took place between the district judge and the police chief:

Q. And was it your object to determine whether or not this blood sample that you were proposing to have taken be checked to see whether or not it corresponded with the blood type that was on the pillow case and on the bedspread?

A. Yes, sir; I wanted to check it out.

 \*  \*  \*  \*  \*  \*

Q. (continuing)—have you ever before or since had a blood test taken for a person who was charged with the offense of common drunkenness—common public drunkenness as distinguished from a D.W.I. charge—driving while intoxicated?

A. No, sir; I have not.

Q. Is that the only time that a test had ever been run in your—

A. (interrupting) First time in my career.

The district judge concluded that "the performance of the blood grouping test without a search warrant, and the subsequent use of the results of the test as evidence at the petitioner's trial, was illegal and in violation of his constitutional rights".

This case is not within the ambit of Schmerber v. California, 1966, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908. In *Schmerber,* the Supreme Court permitted the taking of a blood sample without a warrant and without consent because the officer there "might reasonably have believed that he was confronted with an emergency" in the destruction of the evidence—the reduction of the percentage of alcohol in the blood. Here, on the other hand, the police chief has admitted that his concern was to determine Graves's blood type. That quality is not evanescent; Graves's blood type would remain the same no matter how long it took to secure a warrant. In attempting to justify its warrantless search the state cannot avoid the emergency requirement of *Schmerber* by the consent it extracted from Graves. His consent, based on the police chief's representations, gave no more than the license that *Schmerber* provided without his consent.[1] To endow it with wider effect would allow the state to secure by stratagem what the fourth amendment requires a warrant to produce.[2]

■ The state contends that Graves deliberately bypassed orderly state procedures for raising his constitutional claim. It is true that at the state trial Graves's counsel objected to the introduction of his blood type not specifically on the grounds that it had been illegally secured, but because a proper predicate had

1. We do not say that a blood sample taken in good faith for a legitimate purpose—with consent or under the license of *Schmerber*—cannot upon new developments be used for another purpose not originally contemplated. That is not this case.

2. Frazier v. Cupp, 1969, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684, requires no different result. *Frazier* involved the admissibility of a confession under pre-*Miranda* standards. When the defendant Frazier refused to confess, the interrogating officer told him falsely that his cousin and companion Rawls had already confessed his part. Although still reluctant to talk, Frazier ultimately confessed when the interrogator sympathetically suggested mitigating circumstances. The Supreme

Court approached the question in terms of voluntariness. Employing a "totality of the circumstances" test, it concluded that the confession, which was otherwise voluntary, was not fatally tainted by the interrogator's misrepresentations. But in this case we do not void the consent as to the purpose for which it was given. In the presence of misrepresentation in its acquisition, we simply limit the state to the purposes represented.

If *Frazier* were applicable, and if we were considering the quality of the consent, we would note that *Frazier* dealt with the voluntariness of a confession rather than the waiver of a right not to be searched and that in *Frazier* there was a partial warning of constitutional rights whereas Graves received no warnings.

not been laid. Graves did not appeal. But Graves did raise at his state habeas corpus hearing the issue he raises here. There the state district judge ruled against him and the Texas Court of Criminal Appeals affirmed. We conclude, therefore, that Graves did not deliberately bypass state remedies within the meaning of Fay v. Noia, 1963, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837.

Since we are unable to say that the introduction of Graves's blood type was error harmless beyond a reasonable doubt, Harrington v. California, 1969, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284, we affirm the judgment of the district court.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

### PER CURIAM:

The Petition for Rehearing is denied and the Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is also denied.