WILLIAM PRYOR, Circuit Judge:
This appeal presents the question whether deception by law enforcement necessarily renders a suspect’s consent to a search of a home involuntary. Chenequa Austin and Eric Spivey shared a home and a penchant for credit-card fraud. And they both became crime victims. Their home was twice burgled, which each time they reported to the police. Two officers, one posing as a crime-scene technician, came to their house on the pretense of following up on the burglaries, but mainly, unbeknownst to them, to investigate them for suspected fraud. The police had already caught the burglar who, in turn, had in *1211 formed the police that Austin and Spivey’s house contained evidence of credit-card fraud. Spivey hid some incriminating evidence in the oven before Austin invited the officers inside. The couple then provided the officers video footage of the burglary and led the officers through their home. After the officers saw a card-embossing machine, stacks of cards, and a lot of high-end merchandise in plain view, they informed Spivey that they investigated credit-card fraud. Spivey then consented to a full search that turned up a weapon, drugs, and additional evidence of fraud. Austin and Spivey moved to suppress all evidence obtained as a result of the officers’ “ruse.” The district court denied the motion to suppress because it found that Austin’s consent to the initial search was voluntary and, alternatively, that Spivey’s later consent cured any violation. Austin and Spivey each pleaded guilty to several offenses, conditioned on the right to pursue this appeal of the denial of their motion to suppress. Because Austin made a strategic choice to report the burglary and to admit the officers into her home, the district court did not clearly err in finding that Austin’s consent was voluntary. We affirm.
I. BACKGROUND
Caleb Hunt twice burgled the Lauder-hill, Florida, home of Chenequa Austin and Eric Spivey. Spivey reported the first burglary to the police. The second time, Hunt tripped a newly installed security system. Austin spoke with the police about the second burglary when officers responded to the audible alarm. When the police caught Hunt, he informed them that the residence was the site of substantial credit-card fraud. Indeed, Hunt told the police that the home “had so much high-end merchandise in it that he [burgled] it twice.”
Two members of the South Florida Organized Fraud Task Force then became involved. Special Agent Jason Lanfersiek works for the United States Secret Service investigating financial crimes, including credit-card fraud. Detective Alex Iwaskew-ycz works for the Lauderhill Police Department. The Task Force decided to have Lanfersiek and Iwaskewycz investigate Austin and Spivey’s suspected fraud.
The district court found that Lanfersiek and Iwaskewycz went to the residence “on the pretext of following up on two burglaries, which was a legitimate reason for being there, but not the main or real reason.” Iwaskewycz displayed’ a gun and a badge. Lanfersiek wore a police jacket. Austin saw the agents approaching and went inside to warn Spivey and tell him to hide the card reader/writer in the oven. When the agents told Austin they were there to follow up on the burglary, Austin invited them in. The officers told Austin that Lanfersiek was a crime-scene technician for the police department, and Lan-fersiek maintained the fagade by pretending to brush for latent fingerprints. Austin led Lanfersiek and then Iwaskewycz through the house to the master bedroom, following the burglar’s path. Spivey showed Iwaskewycz home-surveillance video of the burglary. A detective assigned to the burglary investigation later used that video evidence to help prosecute Hunt. Inside the home, both officers observed evidence of fraud, including a card-embossing machine, stacks of credit cards and gift cards, and large quantities of expensive merchandise such as designer shoes and iPads. Austin and Spivey- separately told the officers that the embossing machine had been left in the apartment before they moved in. Iwaskewycz arrested Austin on an unrelated active warrant and removed her from the scene.
The officers then ended their ruse and told Spivey that they investigated credit-card fraud. Nevertheless, Spivey remained *1212 cooperative. After being advised of his rights, he signed two forms giving his consent to the officers to conduct a full search of the home and a search of his computer and cell phone. In that search, officers recovered high-end merchandise, drugs that field-tested positive as MDMA, a loaded handgun, an embossing machine, a card reader/writer (found inside the oven), and at least seventy-five counterfeit cards.
After a federal grand jury returned an indictment against them, Austin and Spi-vey moved to suppress all evidence procured as a result of the officers’ “entry into Austin’s residence ... by fraud ... which vitiated any consent.” The district court denied the motion to suppress and rejected a “bright line rule that any deception or ruse vitiates the voluntariness of a consent [ ] to search.” The district court explained, “Austin wanted to cooperate in solving the burglaries; expensive shoes had been stolen.” The district court found that “Spivey thought he could talk his way out of a predicament and was willing to risk exposure to credit[-]card prosecution to get his property back. Thieves usually don’t report that the property that they stole has been stolen.” And “any problem with [Austin’s] initial consent was cured by Spivey’s later signing a written waiver of a search warrant.” It determined that “the government has shown by clear and positive testimony that the consents were voluntary, unequivocal, specific, intelligently given, and uncontaminated by duress or coercion.”
Both Austin and Spivey conditionally pleaded guilty. Austin pleaded guilty to conspiracy to commit access-device fraud and possess device making-equipment, 18 U.S.C. § 1029(b)(2), and aggravated identity theft, id. § 1028A(a)(1). Spivey pleaded guilty to conspiracy to commit access device fraud and possess device-making equipment, id. § 1029(b)(2), aggravated identity theft, id. § 1028A(a)(1), and being a felon in possession of a firearm, id. § 922(g)(1). Both pleas reserved the right to appeal the denial of the motion to suppress. The district court sentenced Austin to thirty-six months in prison and three years of supervised release and Spivey to seventy months in prison and three years of supervised release.
II. STANDARD OF REVIEW
“A denial of a motion to suppress involves mixed questions of fact and law. We review factual findings for clear error, and view the evidence in the light most favorable to the prevailing party. We review de novo the application of the law to the facts.” United States v. Barber, 777 F.3d 1303, 1304 (11th Cir. 2015) (citations omitted). Voluntariness is “a question of fact,” Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), that we may disturb only if clearly erroneous, United States v. Chemaly, 741 F.2d 1346, 1352 (11th Cir. 1984). “Normally, we will accord the district judge a great deal of deference regarding a finding of voluntariness, and we will disturb the ruling only if we are left with the definite and firm conviction that the trial judge erred.” United States v. Fernandez, 58 F.3d 593, 596-97 (11th Cir. 1995) (citation omitted). But we will review de novo the district court’s application of the law about volun-tariness to uncontested facts. See United States v. Garcia, 890 F.2d 355, 359-60 (11th Cir. 1989) (explaining that because “we believe[d] that the trial eourt[’s]” “decision was based on the application of what he believed to be the existing law as applied to the uncontroverted facts,” we “reviewed] the judge’s finding of voluntariness de novo”).
III. DISCUSSION
The Fourth Amendment provides that “[t]he right of the people to be secure *1213 in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause.” U.S. Const. Amend. IV. A search is reasonable and does not require a warrant if law enforcement obtains voluntary consent. Schneckloth, 412 U.S. at 222, 93 S.Ct; 2041. The parties agree that Austin consented to the search, so the sole question on appeal is whether her consent was voluntary.
“A consensual search is constitutional if it is voluntary; if it is the product of an ‘essentially free and unconstrained choice.’ ” United States v. Purcell, 236 F.3d 1274, 1281 (11th Cir. 2001) (quoting Schneckloth, 412 U.S. at 225, 93 S.Ct. 2041). Voluntariness is “not susceptible to neat talismanic definitions;, rather, the inquiry must be conducted on a case-by-case analysis” that is based on “the totality of the cireumstancés.” United States v. Blake, 888 F.2d 795, 798 (11th Cir. 1989) (citing Schneckloth, 412 U.S. at 224-25, 93 S.Ct. 2041). Relevant factors include the “voluntariness of the defendant’s custodial status, the presence of coercive police procedure, the extent and level of the defendant’s cooperation with police, the defendant’s awareness of his right to refuse to consent to the search, the defendant’s education and intelligence, and, significantly, the defendant’s belief that no incriminating evidence will be found.” Chemaly, 741 F.2d at 1352 (citation omitted).
Deceit can also be relevant to voluntariness. Because we require “that the consent was not a function of acquiescence to a claim of lawful authority,” Blake, 888 F.2d at 798, deception invalidates consent when police claim authority they lack. For example, when an officer falsely professes to have a warrant, the consent to search is invalid because the officer “announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion — albeit colorably lawful coercion.” Bumper v. North Carolina, 391 U.S. 543, 550, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). And when an officer lies about the existence of exigent circumstances, he also suggests that the occupant has no right to resist and may face immediate danger if he tries. See, e.g., United States v. Harrison, 639 F.3d 1273 (10th Cir. 2011) (agents falsely implied that a bomb was planted in the apartment they sought to search). Deception is also likely problematic for consent if police make false promises. See United States v. Watson, 423 U.S. 411, 424, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976) (“There were no, promises made to him and no indication of more subtle forms of coercion that might flaw his judgment.”); cf. Alexander v. United States, 390 F.2d 101, 110 (5th Cir. 1968) (“We do not hesitate to undo fraudulently induced contracts. Are the disabilities here less maleficent?”).
In the tax context, we have ruled that when a taxpayer asked whether a “special agent” was involved in the investigation and the Internal Revenue Service answered “no,” consent was involuntary because it was induced by an official misrepresentation that suggested the investigation was only civil, not criminal. United States v. Tweel, 550 F.2d 297, 299 (5th Cir. 1977). Contrary to the dissent’s assertion that “consent searches are almost always unreasonable” when induced by deceit, Dissenting Op. at 1220 (citing Tweel, 550 F.2d at 299), we have never applied this decision outside the administrative context, let alone to a situation in which the suspect is aware of the criminal nature of the investigation. This limitation makes sense in the light of the rule that police officers are permitted to obtain a confession through deception under the Fifth Amendment. See Illinois v. Perkins, 496 *1214 U.S. 292, 297, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990) (“Ploys to mislead a suspect or lull him into a false sense of security that do not rise to the level of compulsion, or coercion to speak are not within Miranda’s, concerns.”); see also United States v. Peters, 153 F.3d 445, 463 (7th Cir. 1998) (Easterbrook, J., concurring) (“If a misunderstanding of one’s status as a target— misunderstanding abetted by calculated silence and half-truths from agents and prosecutors — does not invariably make a statement involuntary, why should it make a disclosure of physical evidence involuntary?”).
The Fourth Amendment allows some police deception so long the suspect’s “will was [not] overborne,” Schneckloth, 412 U.S. at 226, 93 S.Ct. 2041. Not all deception prevents an individual from making an “essentially free and unconstrained choice,” id. at 225, 93 S.Ct. 2041. For example, undercover operations do not invalidate consent. Lewis v. United States, 385 U.S. 206, 206-07, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966). When an undercover agent asks to enter a home to buy drugs, the consent is voluntary despite the agent’s misrepresentations about his identity and motivation. Id. “If dissimulation so successful that the suspect does not know that he is talking to an agent is compatible with voluntariness, how could there be a rule that misdirection by a known agent always spoils consent?” Peters, 153 F.3d at 464 (Easterbrook, J., concurring). Although we distinguish undercover investigations from those where the officer is “seeking ... cooperation based on his status as a government agent,” United States v. Centennial Builders, Inc., 747 F.2d 678, 682 (11th Cir. 1984), an individual who interacts with officers undertakes a knowing risk that the officers may discover evidence of criminal behavior. Cf. United States v. Wuagneux, 683 F.2d 1343, 1348 (11th Cir. 1982) (“[A]ll taxpayers, especially businessmen, are presumed to be aware of th[e] possibility” “that a routine civil audit may lead to criminal proceedings if discrepancies are uncovered.”). That “fraud, deceit or trickery in obtaining access to incriminating evidence can make an otherwise lawful search unreasonable,” United States v. Prudden, 424 F.2d 1021, 1032 (5th Cir. 1970) (emphasis added), does not mean that it must. Particularly because physical coercion by police is only one factor to be considered in the totality of the circumstances, see Chemaly, 741 F.2d at 1352, we should approach psychological coercion the same way. The district court correctly stated the law when it explained that deception does not always invalidate consent.
Austin and Spivey argue that the officers’ deception was egregious because the purpose of the ruse was to mislead them into believing that the officers were there to “assist them,” not to “bust them.” They argue that a “ruse” about whether Austin was the target of the investigation is worse than misrepresentations about whether an investigation is civil or criminal. We disagree.
We cannot say that it was clear error for the district court to find that, although the burglary investigation was “not the main or real reason” for the search, it was “a legitimate reason for being there.” Iwas-kewycz testified that it was a “dual-purpose investigation.” And the district court found that “the videotape was eventually used in the burglary investigations.” Austin argues that the stated purpose “was nothing more than a ‘pretext’” because one agent had the “exclusive purpose” and the other had the “primary purpose” “to investigate the report of .a credit-card plant,” but even this argument concedes that at least one of the officers had a dual purpose. What matters is the existence of *1215 a legitimate reason to be there, not the priority that the officers gave that reason.
The subjective motivation of the officers is irrelevant. Consent is about what the suspect knows and does, not what the police intend. “Coercion is determined from the perspective of the suspect.” Illinois v. Perkins, 496 U.S. 292, 296, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990). Whether officers “deliberately lied” “does not matter” because the “only relevant state of mind” for voluntariness “is that of [the suspect] himself.” United States v. Farley, 607 F.3d 1294, 1330 (11th Cir. 2010). And officers are entitled to be silent about their motivations. See Prudden, 424 F.2d at 1033 (“[T]he agents did not have to warn him directly that they were undertaking a-criminal investigation.”). The officers’ subjective purpose in undertaking their investigation does not affect the voluntariness of Austin’s consent. See Farley, 607 F.3d at 1330-01.
Pretext does not invalidate a search that is objectively reasonable. Cf. Whren v. United States, 517 U.S. 806, 814, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (“[T]he Fourth Amendment’s concern with ‘reasonableness’ allows certain actions to be taken in certain circumstances, whatever the subjective intent.”); Heien v. North Carolina, — U.S. -, 135 S.Ct. 530, 539, 190 L.Ed.2d 475 (2014) (“We do not examine the subjective understanding of the particular officer involved.”). As long as the officers are engaging in “objectively justifiable behavior under the Fourth Amendment,” Whren, 517 U.S. at 812, 116 S.Ct. 1769, their subjective intentions will not undermine their authority to stop or search, or in this appeal, to ask for consent to search. Responding to a burglary report is objectively justifiable behavior, and we must ask only whether the officers prevented Austin from making a free and unconstrained choice.
Stripped of its subjective purposes, the officers’ “ruse” was a relatively minor deception that created little, if any, coercion. The officers admittedly misrepresented Agent Lanfersiek’s identity, but there is no evidence that his exact position within the hierarchy of criminal law enforcement was material to Austin’s consent. Wuag-neux held that even though the agent did not reveal that he was a part of a strike force, the suspect’s knowledge that the agent worked for the Internal .Revenue Service and was empowered to conduct a tax audit was sufficient for consent. 683 F.2d at 1347-48. Austin likewise knew that Agent Lanfersiek was involved in criminal investigations and was going to search her home. Austin understood that she faced a risk that Lanfersiek would notice evidence of the credit-card fraud when she consented to his presence in her home. His identity is material only to the subjective purpose of the investigation. The dissent argues that Agent Lanfersiek misrepresented his legal authority because the Secret Service does not have the authority to enforce a state burglary offense, Dissenting Op. at 1221, but that misrepresentation did not lead Austin to believe that Lanfersiek could investigate without her consent or that Lanfersiek would not act upon evidence of criminal activity. And Lanfersiek acted within the scope of his authority to investigate credit-card fraud and was accompanied by an officer with the authority to investigate both burglaries and fraud. Pretending to be a crime-scene technician and to dust for fingerprints was perhaps silly and unnecessary, but it was relatively insignificant.
After it considered the totality of the circumstances, the district court correctly determined that Austin’s consent was voluntary. The factors other than deceit all point in favor of voluntariness. Aus *1216 tin was not handcuffed or under arrest when she gave her consent. See Garcia, 890 F.2d at 360-62. She invited the officers' inside the home and volunteered video footage of the burglary. The encounter was polite and cooperative, and the officers used no signs of force, physical coercion, or threats. See United States v. Espinosa-Orlando, 704 F.2d 507, 513 (11th Cir. 1983). The officers did not inform Austin that she had the right to refuse consent, but they were not required to do so. Schneckloth, 412 U.S. at 248-49, 93 S.Ct. 2041. And a warning is even less relevant in this context because it is easier to refuse consent when the police are offering to help than when they initiate an adversarial relationship. The district court found that the consent was “intelligently given.” And “significantly,” Chemaly, 741 F.2d at 1352 (citation omitted), Austin believed that no incriminating evidence would be found — or at least, nothing she and Spivey had not prepared to explain away.
The “ruse” did not prevent Austin from making a voluntary decision. Austin and Spivey informed the police of the burglaries and invited their interaction. The officers did not invent a false report of a burglary, nor claim any authority that they lacked. Agent Iwaskewycz testified that he and Lanfersiek never promised Austin that “[w]e’re just here to investigate a burglary; anything else we see, we’re gonna ignore.” Austin knew that she was interacting with criminal investigators who had the authority to act upon evidence of illegal behavior. There is no evidence that Austin felt that she was required to help with the burglary investigation or that she needed to consent to avoid her inevitable prosecution. From Austin’s perspective, her ability to consent to the search of an area where she knew there was evidence of illegal activity was not dependent on whether the officers provided no explanation or a partial explanation of their intentions. “Motivated solely by the desire” to retrieve her stolen property, Austin consented to the officers’ entry and search “at h[er] own peril.” Cf. Perkins, 496 U.S. at 298, 110 S.Ct. 2394.
And perhaps most significant of all, Austin and Spivey engaged in intentional, strategic behavior, which strongly suggests voluntariness. Although Austin and Spivey were victims of one crime and suspects of another, the district court reasoned, “[t]hieves usually don’t report that the property that they stole has been stolen.” The district court found that Austin and Spivey enlisted the officers’ assistance to recover their property. Austin “wanted to cooperate” because “expensive shoes had been stolen,” and Spivey was “willing to risk exposure to credit[-]card prosecution to get his property back.” Before allowing the officers into their home, they hid the most damning piece of evidence in the oven. And Austin and Spivey gave a rehearsed story to explain the device that remained visible. This prior planning proves that Austin and Spivey understood that asking for the officers’ assistance came with the risk that their own crimes would be discovered. Austin’s behavior does not evoke fear or good-faith reliance, but instead suggests that she sought to gain the benefit of police assistance without suffering potential costs. The more Austin behaved strategically, the more her behavior looked like a voluntary, rational gamble, and less like an unwitting, trusting beguilement. Although the plan to involve police to recover their stolen goods may not have been the best one, voluntariness does not require that criminals have perfect knowledge of every fact that might change their strategic calculus. Nor does it require that “consent [be] in the[ir] best interest.” United States v. Berry, 636 F.2d 1075, 1081 (5th Cir. Unit B 1981).
*1217 When we view the evidence in the light most favorable to the judgment, Austin’s consent was not “granted only in submission to a claim of lawful authority,” Schneckloth, 412 U.S. at 233, 93 S.Ct. 2041 (citations omitted). We agree with the district court that under the totality of the circumstances, “the government has shown by clear and positive testimony that the consents were voluntary, unequivocal, specific, intelligently given, and uncontaminated by duress or coercion.”
Austin and Spivey make two additional arguments based on precedent, both of which fail. First, they rely on the statement that “[intimidation and deceit are not the norms of voluntarism. In order for the response to be free, the stimulus must be devoid of mendacity.” Alexander, 390 F.2d at 110. But this statement is dictum and arose in a materially different context. In Alexander, postal inspectors illegally detained an employee suspected of mail theft. They then admittedly “mislefd]” the defendant by telling him they were investigating mail theft, particularly jewelry, when what they really sought were marked dollar bills they had placed in his mail. Id. at 102-03, 110. We held that compliance with “disingenuous questioning” by the police did not “purg[e] the taint of the illegal arrest.” Id. at 110. Austin’s consent, in contrast, did not have to overcome any previous taint. Second, Austin and Spivey rely on a decision that expressed concern with “allowing] the state to secure by stratagem what the fourth amendment requires a warrant to produce.” Graves v. Beto, 424 F.2d 524, 525 (5th Cir. 1970). But this decision involved the scope of consent, not the volun-tariness of consent. See id. at 525 n.2. In Graves, the police requested a blood sample and the suspect refused. Id. at 525. The suspect consented only after the police said the sample would be' used to determine his alcohol content, but the police nevertheless ran a test to compare his blood type with a blood sample from the scene of a rape. Writing for our predecessor Court, Judge Wisdom interpreted the consent as limited to the blood-alcohol test because individuals can place boundaries on their consent. Id.
Even if Austin and Spivey had framed their appeal as a question of the scope of consent, Judge Wisdom’s approach in Graves cuts in favor of the government. To the extent the officers lied, we would not “void the consent as to the purpose for which it was given,” but instead “simply limit the state to the purposes represented.” Id. at 525 n.2. We could attempt to limit Austin’s consent to the burglary investigation, but unlike in Graves, the two police purposes do not align with divisible searches. If the scope of consent is about physical space, investigating the burglary and the credit-card fraud both involve looking in the living room and master bedroom. Austin gave “unequivocal” and “specific” consent to the physical presence of police in those spaces. The agents did not enter additional parts of the home irrelevant to the burglary, secretly film, or run any fraud-specific tests. Cf. Gouled v. United States, 255 U.S. 298, 309, 41 S.Ct. 261, 65 L.Ed. 647 (1921) (holding it unconstitutional to secretly ransack an office and seize papers when allowed into the home on the false representation that the officer was there for a social visit). The incriminating evidence was in plain view.
If the scope of Austin’s consent were limited by police intent) then the officers had two legitimate ‘ purposes for the search. Judge Wisdom distinguished evidence acquired “in good faith for a legitimate purpose,” Graves, 424 F.2d at 525 n.1, as evidence that could be used for another purpose. And if the police had come to the home with the sole purpose of investigating the burglary, the district *1218 court found that “it is highly likely that he would have seen most of the same incriminating evidence in plain view.” After all, even Hunt, the burglar, was suspicious.
Not all deception by law enforcement invalidates voluntary consent. Austin and Spivey deride the “shocking” nature of the “misconduct” in this case, but we are “not empowered to forbid law enforcement practices simply because [we] consider[] them distasteful.” Florida v. Bostick, 501 U.S. 429, 439, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). The district court did not clearly err in determining that the “ruse” did not coerce Austin into giving her consent involuntarily.
Because the initial search was supported by Austin’s voluntary consent, it did not violate the Fourth Amendment. And because the initial search was constitutional, we do not reach any question about Spi-vey’s later consent and the fruit of the poisonous tree. We affirm the denial of the motion to suppress.
IV. CONCLUSION
We AFFIRM the judgments of conviction and the sentences of Austin and Spi-vey.