[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-17673
Non-Argument Calendar
_____

D.C. Docket No. 4:15-cr-00017-HLM-WEJ-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERT GLENN DANNER, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(December 14, 2017)

Before ED CARNES, Chief Judge, NEWSOM, and FAY, Circuit Judges.

PER CURIAM:

Robert Danner appeals the district court's denial of his motions to suppress

evidence found after a warrantless search of his home and an incriminating statement he made during questioning by police.

## I.

Danner has been on probation since 2003.  He's developed a lengthy rap sheet in the intervening years, but only two of his earlier state court convictions are relevant here:  one in 2006, the other in 2013.  Both are for possession of methamphetamine.  For his first conviction in 2006 Danner was sentenced to fifteen years confinement, the final eleven years of which were to be served on probation.  As part of that conviction, Danner signed a waiver "freely and voluntarily accept[ing]" the "General Conditions of Probation," one of which was that he agree to a search of his person or house at "any time of the day or night with or without a search warrant whenever requested to do so by a probation supervisor or any law enforcement officer."  Danner signed a similar search waiver after his second conviction for possession of methamphetamine in 2013.  He was still subject to both of those search waivers in March 2015, when probation officers accompanied by a drug task force searched Danner's home based on a tip that he was somehow making money but was not lawfully employed.

After the officers knocked on his front door, Danner answered and came out onto his porch to speak with them.  Jill Fisher, one of Danner's supervising probation officers, asked Danner if he understood that under the conditions of his

2

probation he was "subject to search," and Danner said he did.  Fisher then told him that the officers were there to conduct such a search, and Danner agreed to sign a "Waiver of Fourth Amendment Rights" form, acknowledging that he "consents to a search of his . . . person, residence, papers and/or effects . . . with or without a search warrant."  Danner was not handcuffed during that conversation, and the officers did not have their guns drawn.  Neither did they yell, threaten, or put any other pressure on Danner to sign the waiver.  According to the officers, Danner seemed coherent, spoke clearly, and did not appear to be under the influence of any drugs.

After Danner signed the waiver, some of the officers searched his home and found a loaded revolver and ammunition. In addition, they discovered several drug related objects, such as scales and pipes, which later tested positive for methamphetamine residue.  The officers also found the locking key for the revolver and some methamphetamine in Danner's pocket.  He was arrested and brought to the county jail.  Danner was given a Miranda warning by one of the officers, and after he signed a written waiver of his rights, officers questioned him for about fifteen minutes.

Danner was indicted on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2).  He filed a motion to suppress the evidence of the search and a motion to suppress the statements he

made to the officers during questioning.  The district court, over Danner's objection, denied his motions.  Danner entered into a conditional plea of guilty, reserving the right to appeal the denial of his motions to suppress. This is his appeal.

## II.

"Whether a person consented to a search is, as a general proposition, a matter of fact" that is "reviewed for clear error," United States v. Watkins, 760 F.3d 1271, 1279 (11th Cir. 2014) (citations omitted), and this Court will disturb that finding only if we are left with a "definite and firm conviction that the trial judge erred," United States v. Fernandez, 58 F.3d 593, 596–97 (11th Cir. 2005) (citation omitted).  "But we will review de novo the district court's application of the law about voluntariness to uncontested facts."  United States v. Spivey, 861 F.3d 1207, 1213 (11th Cir. 2017) (citation omitted).

## III.

"A search is reasonable and does not require a warrant if law enforcement obtains voluntary consent" from the suspect, id. at 1213, or in other words, if the consent is the result of an "essentially free and unrestrained choice," United States v. Purcell, 236 F.3d 1274, 1281 (11th Cir. 2001) (quotation omitted).  Danner admits that he consented to the search but contends that his consent was not the product of a free choice.  He argues that he merely acquiesced to a show of lawful

4

authority.  He focuses on the fact that the officers reminded him that as a condition of his probation he had agreed to be searched, which was true, and told him they were there to conduct a search, which was also true.  That truthful information, he says, would cause a reasonable person to believe that a search would occur regardless of whether he consented.

There is no "neat talismanic definition[ ]" of "voluntary consent."  United States v. Blake, 888 F.2d 795, 798 (11th Cir. 1989) (citation omitted).  We look to the specific facts of the case to figure out whether a suspect's consent was truly voluntary.  Id.  The inquiry here, like most Fourth Amendment questions, is based on the "totality of the circumstances," including the "voluntariness of the defendant's custodial status, the presence of coercive police procedure, the extent and level of the defendant's cooperation with police, the defendant's awareness of his right to refuse to consent to the search, the defendant's education and intelligence, and, significantly, the defendant's belief that no incriminating evidence will be found."  Spivey, 861 F.3d at 1213 (quotation omitted).

But the calculus changes when police misrepresent their authority for a search.  For example, we have held that when an officer tells a suspect that he has no right to resist a search, or lies about the presence of exigent circumstances, or makes false promises, he hampers the suspect's ability to make a "free and unrestrained choice."  Id.  "Because we require that the consent [is] not a function

5

of acquiescence to a claim of lawful authority," consent is not voluntary where police claim authority that they lack.  Id. (citation and quotation marks omitted).

Danner argues this case is akin to Lebron v. Secretary, 710 F.3d 1202 (11th Cir. 2013), where we held that a Florida statute requiring applicants for the state's Temporary Assistance for Needy Families benefit program to submit to suspicionless drug testing in order to receive program benefits amounted to an involuntary waiver under the Fourth Amendment.  Id. at 1215–18.  But unlike Lebron, the officers here didn't threaten Danner with any negative consequences if he didn't consent.  And there is no evidence that the officers used any kind of physical coercion or intimidation to elicit his consent.  They didn't draw their guns. They didn't yell.  Danner wasn't handcuffed.  And he was responsive, coherent, and lucid during his interactions with the officers.

One officer did remind Danner that one of the terms of his probation was that he was subject to searches.  That is an entirely true statement.  And it is no more coercive than if the officer had said nothing about the terms of his probation, but Danner had recalled them on his own. Without any other evidence of coercion, Danner is essentially taking the position that because the officers failed to remind him that he could refuse to consent, he assumed the waiver was a mere formality, and as a result, his signing it was acquiescing to a claim of lawful authority.  But the officers were not required to inform Danner that he had the right to refuse

consent.  Spivey, 861 F.3d at 1216 (noting that the officers did not inform the suspect "that she had the right to refuse consent," but "they were not required to do so").  "[K]nowledge of a right to refuse is not a prerequisite [to] voluntary consent."  Schneckloth v. Bustamonte, 412 U.S. 218, 234, 93 S. Ct. 2041, 2051 (1973).  And there is no evidence Fisher ever explicitly stated that the officers had an unconditional right to search or that, if he refused to consent, they would do so anyway.  She simply stated the truthful facts that as a condition of his probation Danner was subject to search, and that the officers were there to conduct a search.  If the failure to remind a suspect that he has the right to refuse to consent to a search were enough to find a suspect's consent involuntary, then an officer's failure to remind a suspect of his right to refuse would always render consent involuntary.  That cannot be so.  See Spivey, 861 F.3d at 1216; cf. Schneckloth, 412 U.S. at 231, 93 S. Ct. at 2050 (noting "it would be thoroughly impractical to impose on the normal consent search the detailed requirements of an effective warning" that the suspect had a right to refuse to consent).  The circumstances in this case make it clear that Danner's consent to the search was voluntary, and the district court did not err by denying his motions to suppress.[1]

**AFFIRMED.**

---

[1] Because we find that Danner voluntarily consented to the search here, the search was valid on that basis.  As a result, we need not address his other arguments that the officers lacked reasonable suspicion for the search, that the tips the officers relied on were stale, or that his incriminating statements during questioning were tainted as the result of an unlawful search.