[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-14656
Non-Argument Calendar
_____

D.C. Docket No. 1:19-cr-20245-RNS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DE'UNDRE RASHAD ROBERT TURNER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 17, 2020)

Before WILLIAM PRYOR, Chief Judge, WILSON and LAGOA, Circuit Judges.

PER CURIAM:

De'Undre Turner, who conditionally pleaded guilty to possessing a firearm

and ammunition as a convicted felon, appeals the denial of his motion to suppress.

18 U.S.C. § 922(g)(1). Turner argues that law enforcement officers lacked reasonable suspicion to approach his vehicle, to detain him while verifying that his passenger had a valid permit to carry a concealed weapon, or to remove him from his vehicle and pat him down for weapons. We affirm.

Detective Angel Delgado, Officer Ti'Andre Bellinger, and other officers of the City of Miami Police Department drove to a multi-family residence in the Model City neighborhood of Miami, Florida, to collect genetic material from a resident. Bellinger, who grew up in the area, and Delgado, who patrolled the area regularly, knew that Model City was plagued with drug-related violence and that police informants had bought drugs at the residence. And Delgado suspected that the resident would be armed because a lawful search of the residence two weeks earlier led to the seizure of narcotics and a firearm. Because the parking area was congested, the officers approached the residence from the street with their body cameras activated.

Delgado detected movement inside a blue vehicle near the residence, but he could not see the occupants through the tinted rear windows. Concerned that he might encounter the resident named in the warrant, Delgado walked to the passenger's side of the vehicle. Its windows were rolled down and the detective could see that there were three men in the vehicle and that the front passenger had a gun protruding from under his shirt at the waistband of his pants. The detective

2

asked if there were any guns in the vehicle, and the front passenger quickly responded yes, began searching for a gun permit, and then exited the vehicle with a card in his left hand. After the front passenger volunteered that there was a second gun under his seat, other officers ordered another passenger to exit the rear seat and removed the second gun from the vehicle.

Meanwhile, Bellinger watched an officer approach Turner as he sat in the driver's seat of the vehicle. Bellinger recognized Turner from the neighborhood and noticed that he was acting nervous and was shaking when he produced his driver's license. After the officer heard about the second gun, he asked Turner to exit the vehicle. Turner denied having a weapon, but Bellinger escorted Turner to the back of his vehicle and began to pat him down for weapons. Turner became defensive and upset, so Bellinger stepped away from Turner.

A few minutes later, Turner whispered to Bellinger, "I have a gun, bra, I have a gun." Bellinger confirmed that help was nearby and then wrapped his arms around Turner to secure him. Bellinger yelled, "gun, gun" and another officer removed the gun from Turner's pants. Turner possessed a card that identified him as a convicted felon.

We apply a mixed standard of review to the denial of a motion to suppress. We review legal rulings *de novo* and related findings of fact for clear error. *United*

*States v. Spivey*, 861 F.3d 1207, 1212 (11th Cir. 2017). We consider the evidence in the light most favorable to the prevailing party. *Id.*

The district court did not err by denying Turner's motion to suppress. Delgado was entitled, "without any level of suspicion," to approach a car in a dangerous locale with an unknown number of occupants parked near a residence where he and fellow officers were about to execute a warrant. *See Miller v. Harget*, 458 F.3d 1251, 1257 (11th Cir. 2006) (stating that police do not violate the Fourth Amendment by "approaching a person in a parked car"). When Delgado saw a gun in plain view in the front passenger's waistband, the detective had reasonable suspicion to remove the passenger from the car to determine whether he possessed a valid permit to carry a concealed weapon, Fla. Stat. § 790.06(1). *See United States v. Lewis*, 674 F.3d 1298, 1304–05 (11th Cir. 2012). After the front passenger volunteered that there was a second gun concealed under his seat, safety concerns allowed officers to remove Turner from the driver's seat "to control [his] movements . . . and exercise command over the situation." *See id.* at 1308. Turner's nervous behavior provided Bellinger reasonable suspicion to pat Turner down for weapons. *See Illinois v. Wardlow*, 528 U.S. 119, 125 (2000). Bellinger did not find a weapon and ceased searching Turner when he became upset.

Bellinger later had reasonable suspicion to seize Turner when he admitted that he was armed, which led to the discovery of the gun concealed in his

4

waistband. *See Terry v. Ohio*, 392 U.S. 1, 27 (1968).   The district court was entitled to credit Bellinger's testimony about Turner's admission. *See Lewis*, 674 F.3d at 1303. As explained by the district court, Bellinger's testimony was consistent with the events recorded on his and another officer's body cameras, which included his sudden decision to encircle Turner's arms and chest and to yell "gun" until another officer removed a gun from Turner's waistband.

We **AFFIRM** the denial of Turner's motion to suppress.